**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| KRANOS IP CORPORATION, KRANOS IP II CORPORATION, KRANOS CORPORATION d/b/a SCHUTT SPORTS, *Plaintiffs*, v. RIDDELL, INC., *Defendant*. | § § § § § § § § § § | Civil Action No. 2:17-cv-443-JRG |

<u>**MEMORANDUM OPINION AND ORDER DENYING
MOTION TO DISMISS OR TRANSFER BASED ON IMPROPER VENUE
BUT GRANTING TRANSFER UNDER SECTION 1404**</u>

Before the Court is Defendant Riddell, Inc.'s ("Riddell") Motion to Dismiss or Transfer to the Northern District of Illinois Pursuant to 28 U.S.C. § 1406(a) or 28 U.S.C. § 1404(a). (Dkt. No. 7.) Having considered the Motion, the corresponding briefing, and the relevant authorities, the Court finds that venue is proper in this District. Thus, the portion of Riddell's Motion based on improper venue is **DENIED**. However, the Court is of the opinion that the Northern District of Illinois is a clearly more convenient forum for this particular case. As such, Riddell's Motion based on § 1404(a) is **GRANTED**. As a result, this case is hereby **TRANSFERRED** to the Northern District of Illinois.

## I. BACKGROUND

This is a competitor case between two companies that specialize in the design and manufacture of football helmets used by athletes throughout the United States. Plaintiffs Kranos IP Corporation, Kranos IP II Corporation, and Kranos Corporation d/b/a Schutt Sports (collectively, "Schutt") brought this patent infringement suit against Defendant Riddell, alleging infringement

of three patents related to football helmets. The products accused of infringement in this case are various football helmets made by Riddell. Specifically, the accused products include: SpeedFlex, Revolution Speed, Revolution Speed Classic, 360, Revolution IQ, Foundation, Revolution Edge, Revolution Attack, Revolution Attack-I, Attack, Victor-I, and Victor. (Am. Compl. ¶ 73.) These products are marketed, sold, and used throughout the United States. (Decl. of Thad M. Ide, Dkt. No. 7-1, ¶ 4 ("Ide Decl.").)

Riddell is an Illinois corporation, with its principal place of business located in Des Plaines, Illinois. (Suppl. Decl. of Thad M. Ide, Dkt. No. 20-1 ¶ 3 ("Suppl. Ide Decl.").) Although Riddell recently moved its headquarters from Rosemont, Illinois, to Des Plaines, Illinois, both cities are within the Northern District of Illinois. (Suppl. Ide Decl. ¶ 3.) According to Plaintiffs' Amended Complaint, Riddell is the leading supplier of football helmets in the United States. (Am. Compl. ¶¶ 20, 23.)

Each Schutt Plaintiff is a Delaware corporation with its principal place of business in Litchfield, Illinois. (Am. Compl. ¶¶ 3–5.) Schutt is a leading supplier of protective and sports equipment, including football helmets. (Am. Compl. ¶ 6.)

Riddell's Motion seeks dismissal or transfer based on improper venue under § 1406 and, in the alternative, transfer based on convenience under § 1404(a). The Court is aware some courts have held that § 1404(a) applies only upon a finding that venue is proper in the transferor district. *See, e.g.*, *Nizami v. Woods*, 263 F. Supp. 124, 125 (S.D.N.Y. 1967) ("Since venue in this District is improper, § 1404(a) quite clearly does not apply."); Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3845 (4th ed.) ("Section 1404(a) applies when the transferor is a proper venue. Section 1406(a) applies when the transferor is an improper venue."). Without necessarily agreeing with this

position, the Court will nonetheless address the portion of Riddell's Motion based on improper venue before addressing Riddell's arguments regarding convenience.[1]

## II.  IMPROPER VENUE

### a.  Rule 12(b)(3) Standard

The evidentiary framework surrounding a Rule 12(b)(3) motion combines aspects of a Rule 12(b)(6) analysis with elements of a summary judgment analysis. At the outset, it is clear that a district court may look beyond the complaint when deciding a motion to dismiss based on improper venue. *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009) (stating that under Rule 12(b)(3) a court may look at evidence beyond the facts alleged in the complaint and its attachments).[2] With this in mind, two potential sources of factual information come into play in the improper venue analysis: (1) the well-pleaded facts in a plaintiff's complaint; and (2) affidavits or evidence submitted by a defendant in support of its motion to dismiss (or by a plaintiff in response thereto).

With respect to the well-pleaded facts in a plaintiff's complaint, in the 12(b)(3) context, the majority of circuit courts, including the Fifth Circuit, accept these facts as true, at least initially. *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007); *Deb v.*

---

[1] The Court notes that Riddell filed its Motion to Dismiss (Dkt. No. 7) just a few hours after Schutt filed its Amended Complaint (Dkt. No. 6). Riddell states that although its Motion referred to paragraphs from Plaintiffs' original Complaint, its Motion is based on the operative complaint in the case—here, the Amended Complaint. (Dkt. No. 20 at 2 n.1.) Accordingly, the Court analyzes Riddell's Motion in view of Plaintiffs' Amended Complaint.

[2] *See also Deb v. SIRVA, Inc.*, 832 F.3d 800, 809 (7th Cir. 2016) ("Rule 12(b)(3) is a somewhat unique context of dismissal in that a court may look beyond the mere allegations of a complaint, and need not view the allegations of the complaint as the exclusive basis for its decision."); *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1260–61 (10th Cir. 2012) ("In reviewing dismissals for improper venue, we have considered evidence outside the complaint such as a defendant's affidavits."); *Estate of Myhra v. Royal Caribbean Cruises, Ltd.*, 695 F.3d 1233, 1239 (11th Cir. 2012) ("In sum, Rule 12(b)(3) is a somewhat unique context of dismissal in which we consciously look beyond the mere allegations of a complaint, . . . we do not view the allegations of the complaint as the exclusive basis for decision."); *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004) (noting that a court may consider facts outside of the pleadings in the 12(b)(3) context).

*SIRVA, Inc.*, 832 F.3d 800, 809 (7th Cir. 2016); *Estate of Myhra v. Royal Caribbean Cruises, Ltd.*, 695 F.3d 1233, 1239 (11th Cir. 2012); *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir. 2012); *Pierce v. Shorty Small's of Branson Inc.*, 137 F.3d 1190, 1192 (10th Cir. 1998).[3] However, the well-pleaded facts are accepted as true "only to the extent that such facts are uncontroverted by [a] defendant's affidavit." *Pierce*, 137 F.3d at 1192 (citing *Home Ins. Co. v. Thomas Indus., Inc.*, 896 F.2d 1352, 1355 (11th Cir. 1990)). *See also Deb*, 832 F.3d at 809 ("Under Rule 12(b)(3), which allows for dismissal for improper venue, the district court assumes the truth of the allegations in the plaintiff's complaint, unless contradicted by the defendant's affidavits."); *Myhra*, 695 F.3d at 1239; *Bockman*, 459 F. App'x at 158 n.1.

In *Pierce*, for example, the plaintiff did not submit affidavits or evidence in response to the defendant's improper venue motion, but instead doubled-down on its complaint, arguing that it was entitled to rely on the well-pleaded facts in its complaint even after the defendant had submitted affidavits controverting those alleged facts. *Pierce*, 137 F.3d. at 1192. The Tenth Circuit agreed that, generally, a plaintiff could rely on the allegations in its complaint, but explained that this was true only to the extent that those allegations remained uncontroverted. *Id.* The Circuit then found that, in that particular case, the defendant's affidavit defeated the plaintiff's venue allegations. *Id.* Accordingly, when a defendant submits affidavits or evidence controverting specific facts alleged in a plaintiff's complaint, a court is no longer required to accept those controverted facts as true. *See Deb*, 832 F.3d at 809; *Bockman*, 459 F. App'x at 158 n.1; *Pierce*, 137 F.3d at 1192.

---

[3] The Ninth Circuit appears to hold to the contrary. *See Peterson v. Boeing Co.*, 715 F.3d 276, 279 (9th Cir. 2013) ("The non-moving party's pleadings need not be accepted as true, however, and we may consider facts outside the pleadings."); *Murphy*, 362 F.3d at 1137 ("Also, because [defendant's] motion to enforce a forum selection clause is made pursuant to Fed. R. Civ. P. 12(b)(3), the pleadings need not be accepted as true . . . ." (citing *Richards v. Lloyd's of London*, 135 F.3d 1289, 1292 (9th Cir. 1998))).

### b. Improper Venue Standard

"Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b) (2012). As to domestic corporations, this statute is "the sole and exclusive provision controlling venue in patent infringement actions." *TC Heartland*, 137 S. Ct. at 1519 (quoting *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 229 (1957)). If venue is not proper, a defendant may move to dismiss the case or transfer it to a district in which the case could have been originally brought. Fed. R. Civ. P. 12(b)(3); 28 U.S.C. § 1406(a).

While § 1400(b) does not define the word "resides," the Supreme Court in *Fourco* concluded that, under § 1400(b), a domestic corporation resides only in its state of incorporation. 353 U.S. at 226; *TC Heartland*, 137 S. Ct. at 1521.

Even if a domestic corporation does not reside in the district in which the case is filed, venue remains proper if that defendant has committed acts of infringement in the district and has a regular and established place of business within the district. 28 U.S.C. § 1400(b).

### c. Analysis

Defendant Riddell is incorporated in Illinois. (Am. Compl. ¶ 7.) Under *TC Heartland*, Riddell's residency cannot serve as the basis for proper venue. As such, Schutt relies on the second prong of the patent venue statute to establish venue: where the defendant has committed acts of infringement and has a regular and established place of business. 28 U.S.C. § 1400(b).

The Parties in this case spend much of their briefing addressing which party bears the burden of establishing proper venue, with both sides citing case law in support of their respective

positions. As this Court has previously noted, a deep divide exists with respect to which party bears the burden in improper venue disputes. *Raytheon Co. v. Cray, Inc.*, --- F. Supp. 3d ---, No. 2:15-cv-1554, 2017 WL 2813896, at *2 (E.D. Tex. June 29, 2017). Recent case law from this District, however, has found that the burden lies with the defendant who seeks to protect the privilege of having its case heard in a convenient forum. *See, e.g.*, *Soverain IP, LLC v. Apple, Inc.*, 2:17-cv-207-RWS-RSP (E.D. Tex. July 25, 2017) ("Because an objection to venue is a personal privilege that offers protection from inconvenience, the burden of establishing improper venue lies with the defendant."). *See also Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 168 (1939) (referring to venue as a "personal privilege" that may be waived). While this Court sees no apparent error in the *Soverain* decision, in this case, the Court declines to address this question, as the result would be the same regardless.

### i. Acts of Infringement

With respect to acts of infringement in this District, Plaintiffs allege that Riddell sells the infringing football helmets in this District. For example, Schutt alleges that Riddell's local representative sells directly to schools, counties, municipalities, and school districts in this District, including to the Marshall Independent School District and specifically to the Marshall Mavericks High School football team. (Am. Compl. ¶¶ 31, 36–38, 52–53.) Riddell does not appear to dispute these allegations for purposes of the venue analysis. (*See* Dkt. No. 7.) As such, the Court will not address this aspect of the venue inquiry further. Based on the uncontroverted[4] facts, for

---

[4] Throughout this Order, the Court points to facts alleged in Plaintiffs' Amended Complaint. In its Reply brief, Riddell includes a footnote that attempts to generally discount the facts included in Plaintiffs' Amended Complaint as being based on "information and belief." (Dkt. No. 20 at 4 n.4.) Riddell then states: "Riddell will respond to the inaccuracies in Schutt's allegations at the appropriate time, if it is required to respond to the Amended Complaint." When considering a 12(b)(3) motion, a court accepts uncontroverted allegations in the complaint as true. *See supra* II.a. By failing to dispute Plaintiffs' allegations, Riddell has given this Court no other option but to take such allegations as true

venue purposes, Riddell has committed acts of infringement in this District within the meaning of § 1400(b).[5] *See Raytheon*, No. 2:15-cv-1554, 2017 WL 2813896, at *4 (noting that courts have consistently held that an allegation of infringement is sufficient to establish this aspect of the venue analysis).

### ii. Regular and Established Place of Business

The crux of the Parties' dispute as to improper venue turns on whether Riddell has a regular and established place of business in this District. Riddell contends that it does not have a regular and established place of business in this District because it has no "place of business," facilities, property, or offices located in the District. (Dkt. No. 7 at 16; Ide Decl. ¶ 10.) Schutt's Response provides a lengthy statement of facts to the contrary. (Dkt. No. 15 at 9–11.) For example, as Riddell admits in its declarations, Riddell employs two sales representatives in this District—one in Plano, Texas, and one in White Oak, Texas. (Ide Decl. ¶ 11.) These two sales representatives work out of their personal residences and submit purchase orders to Riddell's manufacturing and distribution facility in Ohio. (Ide Decl. ¶ 11.)

In *Raytheon*, this Court highlighted the four factors which this Court views as the most significant guideposts for analyzing whether a defendant has a regular and established place of business in a particular judicial district. *Raytheon*, No. 2:15-cv-1554, 2017 WL 2813896, at *1. In this Court's view, these four factors are useful in discerning the type of *place* that should be considered a "regular and established place of business" under the statute.

The four factors identified in *Raytheon* include: (1) the extent to which a defendant has a physical presence in the district, including but not limited to property, inventory, infrastructure, or

for the purposes of this Motion.
[5] The Court's holding does not address the merits of Schutt's infringement claims, but considers them solely in the context of its venue analysis.

7

people; (2) the extent to which a defendant represents, internally or externally, that it has a presence in the district; (3) the extent to which a defendant derives benefits from its presence in the district, including but not limited to sales revenue; and (4) the extent to which a defendant interacts in a targeted way with existing or potential customers, consumers, users, or entities within a district, including but not limited to through localized customer support, ongoing contractual relationships, or targeted marketing efforts. *Raytheon*, 2017 WL 2813896, at *11–13.

With these factors in mind, the Court addresses the facts of this case. The Court also considers facts presented that fall outside of these four factors because, as this Court has previously emphasized, the purpose of the four factors is merely to provide a "tailored 'totality of the circumstances' approach to venue, guided by the important goal of administrative simplicity." *Raytheon*, No. 2:15-cv-1554, 2017 WL 2813896, at *11. These four factors, of course, are not exhaustive and do not circumvent other relevant considerations.

### 1. Physical Presence in the District

Under the first *Raytheon* factor, the Court considers "the extent to which a defendant has a physical presence in the district, including but not limited to property, inventory, infrastructure, or people." *Raytheon*, No. 2:15-cv-1554, 2017 WL 2813896, at *11. Riddell employs at least[6] two

---

[6] Plaintiffs' Complaint alleges that Riddell's website identifies approximately five full-time direct sales representatives who are located in this District. (Am. Comp. ¶ 27.) However, the affidavit submitted with Riddell's Motion states that Riddell employs two sales representatives in this District. (Ide Decl. ¶ 11.) In Schutt's Response, Schutt does not include affidavits or other evidence to support its allegation that there are least five representatives in the District. Instead, Schutt merely points the Court, again, to its Complaint and claims that the allegation was uncontroverted. (Dkt. No. 15 at 4.) Riddell responds with another affidavit noting that the online map cited in Plaintiffs' Complaint includes the disclaimer: "Note: Map does not represent exact locations of Riddell sales representatives." (Dkt. No. 20 at 5 (citing Ex. 2, Dkt. No. 20-4).) Riddell further explains that the map cited by Schutt is not an up-to-date reflection of Riddell's sales representatives, and that Riddell transitioned to a new website that does not include this map in 2013. (Suppl. Ide Decl. ¶ 6.) Riddell again emphasizes that it has *just* two sales representatives in this District. (Dkt. No. 20 at 5 (citing Ide Decl. ¶ 11).) Although Schutt argues that Riddell waived the opportunity to dispute this factual issue, the Court finds that Riddell's original affidavit submitted with its Motion was sufficient to controvert the allegation in Plaintiffs' Complaint. (*See* Ide Decl. ¶ 11.) Schutt next argues that

8

full-time direct sales representatives who are based in this District and who work exclusively for Riddell. (Am. Compl. ¶¶ 24–28, 31–33; Ide Decl. ¶ 11.) These two representatives work from their personal residences. (Ide Decl. ¶ 11.) One of these direct sales representatives is Mr. Rokky Mullikin. (Am. Compl. ¶ 31.) Mr. Mullikin's LinkedIn page states that he is a "NorthEast Texas Sales Rep at Riddell" and lists his location as Longview, Texas. (Am. Compl. ¶ 31.) His contact information includes a phone number with a local (903) area code. (Am. Compl. ¶ 31.)

Riddell's direct sales representatives receive the infringing helmets in this District, keep samples in this District, and display and show these samples in this District. (Am. Compl. ¶ 29.) They also give sales presentations for Riddell in this District and provide promotional materials about the infringing products. (Am. Compl. ¶ 29.) Schutt further alleges that Riddell has sales showrooms in this District for the purpose of displaying samples of the infringing helmets. (Am. Compl. ¶ 30.)

These facts tend to show that Riddell has a substantial physical presence in this district. This factor therefore weighs in favor of finding that Defendant's place of business in this District is a regular and established place of business.[7]

---

Defendant failed to provide evidence that it has never had five sales representatives in this District. Plaintiffs' argument misses the mark. Once a defendant has submitted affidavits controverting allegations, a court is no longer required to take such allegations as true. *See, e.g.*, *Deb*, 832 F.3d at 809. Instead, a plaintiff should provide its own competing affidavits or evidence with respect to that factual issue. *See Pierce*, 137 F.3d. at 1192. Schutt has failed to do so here. The Court thus finds that Defendant employs two sales representatives in this District. (*See* Ide Decl. ¶ 11.)

[7] Aside from direct sales representatives, Riddell also sells at least some of the accused products through Dick's Sporting Goods retail stores that are situated in this District. (Am. Compl. ¶ 49–50 (showing that accused helmets are listed as in stock and available for purchase at Dick's Sporting Goods in Longview, Texas).) Whether a regular and established place of business may be established by or through a defendant's relationship with independent retail stores in a district is an important question. However, such question need not be addressed in this case. Here, the Court's holding relies solely on the offices of Riddell's direct sales representatives in this District, without giving any consideration to its sales through independent retailers like Dick's Sporting Goods.

### 2. *Defendant's Representations Regarding its Presence in the District*

The second *Raytheon* factor focuses on "the extent to which a defendant represents, internally or externally, that it has a presence in the district." *Raytheon*, No. 2:15-cv-1554, 2017 WL 2813896, at *12. This inquiry stems from an equitable concern that a defendant should not be permitted to portray itself as a local provider or local business, then deny such representations when they become inconvenient. *See Chadeloid Chem. Co. v. Chicago Wood Finishing Co.*, 180 F. 770, 771 (C.C.S.D.N.Y. 1910) (Hand, J.) (placing emphasis on a defendant's representations in the regular and established place of business inquiry and stating that the defendant could not "with a good grace" deny its presence in a region where the local agent's office was advertised as a place of business for defendant and where the defendant expected inquiries to be directed to the local agent).

The well-pleaded facts presented by Schutt show that Riddell holds out its direct sales representatives in this District as local contact persons for Riddell. Schutt's Complaint indicates that Riddell's preferred method of accepting orders is through its direct sales force representatives. (*See* Am. Compl. ¶ 26 (explaining that customers other than individuals should fill out a form to be contacted by a direct sales representative).) In fact, Riddell takes pride in its vast direct sales force. Specifically, Riddell has advertised that "Riddell/All American manufactures and distributes all of their products through its own direct sales force and a select number of dealers. Riddell/All American has ten company centers and over 230 full-time salesmen / saleswomen." (Am. Compl. ¶ 24.) Riddell has also proclaimed that it has the "only national sporting goods direct sales force calling on junior high schools, high schools, and colleges." (Am. Compl. ¶ 25.) Riddell's business strategy of having identified, local sales representatives is confirmed by the fact that Mr. Mullikin

is the "identified contact" for schools, counties, municipalities, and school districts in this District. (Am. Compl. ¶ 31.)

These facts demonstrate that Riddell views its local sales representatives as an intended point of interaction between the public and Riddell in each region. *See Chadeloid*, 180 F. at 771 (Hand, J.) ("The question is whether the defendant had accepted [the local representative's] office as a place of business of their own—of such business as they might wish to do in the East."). Riddell's external representations, directing customers to local sales representatives, supports this as well. (Am Compl. ¶ 26.) Thus, this factor weighs in favor of finding that Riddell's place of business in this District is regular and established.

### 3. *Benefits Defendant Received from the District*

Under the third *Raytheon* factor, the Court considers the extent to which a defendant derives benefits from its presence in the district, including but not limited to sales revenue. *Raytheon*, No. 2:15-cv-1554, 2017 WL 2813896, at *13. Riddell argues that Schutt improperly equates sales in a district with having a regular and established place of business in a district and that merely "doing business" in a district is not enough. (Dkt. No. 20 at 4.) In the same vein, Riddell argues that Schutt suggests that "any company with a national footprint [would be] subject to venue in virtually every district in the country, simply by virtue of marketing and selling products there." (Dkt. No. 20 at 2.)

To be sure, evidence of product sales in a district, on its own, does not demonstrate a regular and established place of business in that district. This Court agrees with the reasoning of earlier courts that having a "regular and established" place of business must mean more than simply "doing business" in a district, as that phrase is used in the general venue statute. *See* 28

U.S.C. § 1391(f) ("A civil action against a foreign state as defined in section 1603(a) of this title may be brought . . . in any judicial district in which the agency or instrumentality is licensed to do business or is doing business . . . ."); *Knapp-Monarch Co. v. Casco Prod. Corp.*, 342 F.2d 622, 625 (7th Cir. 1965). However, evidence regarding sales in a district is a factor in the venue analysis. It provides a fuller picture of whether a defendant's place of business in a particular district is regular and established. Said another way, significant sales revenue from a district suggests that the defendant's place of business there is indeed "regular and established." Again, no factor is dispositive, and even significant revenue generated from a particular district will not typically be alone sufficient to find a regular and established place of business within that district.

In this case, the allegations presented under this factor do not impact the venue analysis. Schutt alleges that "Defendant makes a significant percentage of its total sales of the infringing helmets to Texas residents," (Am. Compl. ¶ 54), and that Riddell "derives substantial revenue from the sale of infringing products distributed within this District" (Am. Compl. ¶ 10). There are two problems with these assertions. First, to the extent that the allegations are not tailored to benefits Riddell has received from its place of business in this District specifically, as opposed to the State of Texas generally, the Court will not consider them. Second, a broad allegation of significant sales, without more, provides insufficient detail for the Court to give this allegation much (if any) weight. Without specific probative details from either party regarding benefits Riddell has received as a result of its place of business in this District, the Court finds this factor neutral.[8]

---

[8] The Court notes that neither party has sought venue discovery in this case.

### 4. Targeted Interactions with the District

Under this factor, the Court considers "the extent to which a defendant interacts in a targeted way with existing or potential customers, consumers, users, or entities within a district, including but not limited to through localized customer support, ongoing contractual relationships, or targeted marketing efforts." *Raytheon*, No. 2:15-cv-1554, 2017 WL 2813896, at *13.

Schutt alleges generally that Riddell "advertises its products in this District." (Am. Compl. ¶ 33.) However, Plaintiffs' broad statement fails to provide details regarding what type of advertising Riddell has conducted in this District. In this Court's view, the mere fact that a defendant advertises in a district is not, on its own, sufficient to prevail on this factor. Further, the Court is of the opinion that general, nationwide marketing efforts are insufficient to sway this factor in favor of proper venue. In this Court's view, the purpose of the fourth *Raytheon* factor is to identify how a defendant has specifically targeted the distinct communities within a particular district.

However, despite the above deficiencies, Schutt has alleged other types of targeted interactions with this District that more appropriately demonstrate a valid application of this factor. In particular, Schutt alleges that Riddell maintains showrooms in this District that display samples of the accused football helmets. (Am. Compl. ¶ 30.) Moreover, Schutt notes that Riddell's local representatives give sales presentations in this District. (Am. Compl. ¶ 29.) This is some evidence that Riddell has intentionally targeted customers of this District, as opposed to just marketing its products in a "broad brush" or nationwide manner.

Localized customer support provided by a defendant would also tend to show that a defendant has a regular and established place of business in a district. In this regard, Schutt points

out that Riddell offers in-house reconditioning and recertification services to residents of this District. (Am. Compl. ¶¶ 55–60.) Moreover, Schutt alleges that Riddell provides original Riddell parts and accessories to independent helmet reconditioners. (Am. Compl. ¶¶ 61–62.) Schutt attempts to tie these activities to this District by claiming that Riddell's in-house service reconditions helmets for persons and entities in this District, and that Riddell provides parts to independent helmet reconditioners located in this District. (Am. Compl. ¶¶ 61, 58.) Although Riddell's in-house reconditioning services likely provide a valuable service to Riddell's local customers, this is not the type of *localized* customer support envisioned under the fourth *Raytheon* factor. In this Court's view, this type of customer service is more akin to nationwide customer support, where a company has a centralized, out-of-district system for providing customer support. It is not the type of local customer support that would be provided, for example, by a company who sends technicians saddled with parts to the homes or businesses of its customers. The alleged facts regarding Riddell's reconditioning services do not bolster Schutt's argument that a regular and established place of business exists in this District.

Although Schutt also points to other types of broad marketing efforts by Riddell, the Court is not persuaded that these additional efforts should impact the venue analysis. For example, Schutt notes that Riddell maintains a custom online store front (Kollege Town Sports) through the Riddell website. (Am. Compl. ¶¶ 34–35.) However, Schutt has not explained how this website specifically targets this District in any way. As such, the mere existence of a website, without more, does not weigh in favor of finding venue proper.

Having considered the well-pleaded facts and evidence presented by the Parties, and having weighed the totality of such in light of the factors that the Court views as most significant in

the venue analysis, the Court is persuaded that Riddell has a regular and established place of business in this District.

Although, on these facts, the Court finds that the home office in this case is a regular and established place of business, the Court can envision factual scenarios in which a home office may not be considered a regular and established place of business.

### 5. In re Cordis

Though the Court considers the *Raytheon* factors discussed above to be merely a general distillation of the reasoning found in *Cordis* and in earlier district court decisions, as opposed to an entirely new framework, the Court recognizes that the facts of this case are sufficiently similar to those in *Cordis* as to warrant denial of Riddell's improper venue motion. *See In re Cordis Corp.*, 769 F.2d 733 (Fed. Cir. 1985). As such, were this Court to rely solely on the Federal Circuit's decision in *Cordis*, the Court's holding would not change, as explained below. *See id.*

In *Cordis*, a Minnesota corporation sued a Florida corporation for patent infringement relating to the sale of implantable heart pacemakers. *Id.* at 734. The defendant moved to dismiss the case under 12(b)(3), contending that it did not have a "regular and established place of business" in Minnesota. *Id.* After the district court denied the motion, the Federal Circuit denied the defendant's petition for a writ of mandamus. *Id.*

In that case, the defendant employed two full-time sales representatives, each based in Minnesota. *Id.* at 735. Both employees were paid a salary plus commission and worked exclusively for the defendant, which supplied them with a company owned car. *Id.* In addition, the defendant engaged a Minnesota secretarial service to receive messages, provide typing services, mail Cordis literature, and receive shipments of Cordis sales literature. *Id.* The representatives'

business cards listed the telephone number of the Minnesota secretarial service, and phone calls to the number were answered "Cordis Corporation." *Id.* Furthermore, the two employees stored Cordis literature, documents, and products in their home offices. *Id.* Although Cordis was not registered to do business in Minnesota and did not own or lease property in the state, the accused products could be ordered directly from the Florida office or through a Minnesota sales representative. *Id.* In addition to sales, the two Cordis representatives acted as technical consultants and were present in the operating room during a significant number of surgical implantations, provided post-implantation consultations, and gave presentations regarding technological developments. *Id.*

Both Parties in this case point to the following paragraph from *Cordis* as setting out the appropriate test regarding whether a defendant has a regular and established place of business in a district:

> . . . [I]n determining whether a corporate defendant has a regular and established place of business in a district, the appropriate inquiry is whether the corporate defendant does its business in that district through a permanent and continuous presence there and not as Cordis argues, whether it has a fixed physical presence in the sense of a formal office or store.

*Cordis*, 769 F.2d at 737. (*See* Dkt. No. 7 at 13 (quoting this standard, but omitting the portion of the sentence indicating that a "fixed physical presence in the sense of a formal office or store" is not required)[9]; Dkt. No. 15 at 7.)

---

[9] After first pointing to *Cordis* as the governing standard regarding the meaning of "regular and established place of business," Riddell appears to hedge its argument in its Reply by stating, in passing, that Fifth Circuit law should apply to the interpretation of 28 U.S.C. § 1400(b). (Dkt. No. 20 at 3.) This argument is not persuasive. This is especially true given that Riddell raised this argument for the first time in its Reply. (In its original Motion, Riddell pointed to regional circuit law only in the § 1404(a) context.) As this Court has previously held, interpretation of the specific patent venue statute is a matter unique to patent law. *Navico, Inc. v. Garmin Int'l, Inc.*, No. 2:16-cv-190, 2017 WL 2957882, at *1 (E.D. Tex. July 11, 2017). Thus, Federal Circuit law governs this issue. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).

The facts presented here by Schutt mirror those in *Cordis*. As in *Cordis*, Riddell has two exclusive sales representatives in this District. (Ide Decl. ¶ 11.) These representatives are salaried employees who receive from Riddell compensation, commissions, benefits, and traveling expenses. (Am. Compl. ¶ 28.) The LinkedIn page for one representative states that he is a "NorthEast Texas Sales Rep at Riddell" and lists his location as Longview, Texas. (Am. Compl. ¶ 31.) Further, his contact information includes a phone number with a local (903) area code. (Am. Compl. ¶ 31.) These direct sales representatives also keep and display samples of the infringing helmets in the District. (Am. Compl. ¶ 29.) They also give sales presentations in this District and provide promotional materials in this District about the infringing products. (Am. Compl. ¶ 29.) Schutt further alleges that Riddell has sales showrooms in this District for the purpose of displaying samples of the infringing helmets. (Am. Compl. ¶ 30.) Finally, unlike the defendant in *Cordis*, Riddell is registered to do business in Texas. (Am. Compl. ¶ 7.)

The activities of Riddell's sales representatives in this District largely mirror the activities of the sales representatives in *Cordis* and are therefore sufficient to meet the "regular and established place of business" requirement of § 1400(b).

Accordingly, having found that both aspects of the second prong of § 1400(b) are satisfied, the Court finds venue to be proper in this District.

## III.    TRANSFER FOR CONVENIENCE UNDER SECTION 1404(a)

Having first determined that venue is proper in this District, the Court now turns to that portion of Riddell's Motion which seeks a transfer under § 1404(a) based on convenience. This case provides an example of how the convenience analysis supplements the proper venue inquiry.

In many cases, even where venue is found to be proper in this District, the reality remains that another district may nonetheless be a clearly more convenient venue. Such is the case here.

### a. Legal Standard

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of Section 1404(a) is "to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Cont'l Grain Co. v. Barge F.B.L.—585*, 364 U.S. 19, 26, 27 (1960)).

The first inquiry when analyzing a case's eligibility for § 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). Once that threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses, as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009). The private factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Volkswagen I*, 371 F.3d at 203. The public factors are (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of

foreign law. *Volkswagen I*, 371 F.3d at 203. These factors are to be decided based on "the situation which existed when suit was instituted." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960). Though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314–15 (5th Cir. 2008) ("*Volkswagen II*").

While a plaintiff's choice of venue is not an express factor in this analysis, the appropriate deference afforded to the plaintiff's choice is reflected in a defendant's elevated burden of proof. *Id.* at 315. In order to support its claim for a transfer under § 1404(a), the defendant must demonstrate that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *Id.* Absent such a showing, the plaintiff's choice is to be respected.

**b. Analysis**

i. <u>This Action Could Have Been Brought in the Northern District of Illinois</u>

The Parties agree that this case could have been brought in the Northern District of Illinois. (Dkt. No. 7 at 11; Dkt. No. 15 at 12 n.14.) The Court concurs. *See TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1517 (2017) (holding that a domestic corporation resides only in its state of incorporation for purposes of the patent venue statute). As such, the threshold requirement for transfer under § 1404(a) is satisfied.

The Court next addresses the applicable private and public interest factors, in turn, and addresses the Parties' arguments as appropriate.

ii. <u>Private Interest Factors</u>

*1. Relative ease of access to sources of proof*

The first private interest factor regarding access to sources of proof pertains to where documentary evidence, such as documents and physical evidence, is stored.[10] *See Volkswagen II*, 545 F.3d at 316 (discussing the location of documents and physical evidence relating to a vehicle accident).

Riddell maintains its documentation pertaining to research, design, development, testing, and functionality of the accused products in its Illinois headquarters. (Ide Decl. ¶ 5; Suppl. Ide Decl. ¶ 5.) Also at its Illinois headquarters, Riddell stores records of Riddell's engineers, in addition to prototypes and physical samples of the accused helmets. (Ide Decl. ¶ 6.) The company's financial documents related to the accused products are also maintained at Riddell's Illinois headquarters. (Ide Decl. ¶ 7; Suppl. Ide Decl. ¶ 5.) Riddell notes that some documents related to the pending litigation between Riddell and Schutt in the Northern District of Illinois are located at Schutt's and its attorneys' offices in Chicago, Illinois. (Dkt. No. 7 at 17 (citing Hanewicz Decl. Ex. 6, Schutt's First Supplemental Rule 26(a) Disclosures in the Illinois litigation).) Riddell is not aware of any documentary evidence in this District. (Dkt. No. 7 at 18.)

In its Response, Schutt makes much of Riddell's statements that Riddell's documents are "maintained" in Illinois, arguing that Riddell does not specify whether the documents are maintained in electronic or hard copy format. (Dkt. No. 15 at 12.) In Plaintiffs' view, this ambiguity should be construed as indicating that Riddell's documents are stored digitally and thus only factor slightly into the transfer analysis. (Dkt. No. 15 at 13–14.) Defendant addressed this

---

[10] Although witnesses are "sources of proof" in a sense, the Court analyzes the various arguments made regarding witnesses under the factors that focus on the availability of compulsory process and the cost of attendance for willing witnesses. The Parties have structured their arguments consistent with this framework.

ambiguity in its Reply by filing a supplemental declaration from Mr. Ide. (Suppl. Ide Decl. ¶ 5.) In

that declaration, Mr. Ide explains that documents regarding research, design, development, testing,

and functionality of the accused products, as well as financial documents, are "physically located"

in Riddell's Illinois headquarters. (Suppl. Ide Decl. ¶ 5.) Moreover, the Fifth Circuit has made

clear that the fact that "access to some sources of proof presents a lesser inconvenience now than it

might have absent recent developments does not render this factor superfluous." *Volkswagen II*,

545 F.3d at 316. Thus, the Court is not persuaded by Plaintiffs' argument on this point.[11]

Schutt next argues that Riddell has not demonstrated how the documents referenced by

Riddell are relevant to this action. (Dkt. No. 15 at 14.) Specifically Schutt argues that technical

specifications are *too* detailed and are unnecessary for an infringement analysis of "macro-level"

features of the accused helmets. (Dkt. No. 15 at 14.) Schutt emphasizes that only the allegedly

infringing helmets themselves are needed to assess infringement. (Dkt. No. 15 at 14 n.15.) Schutt

therefore argues that even the prototypes located in Illinois are irrelevant, and that physical

samples of the infringing helmets that are needed may already be found throughout the United

States. (Dkt. No. 15 at 15 (citing Ide Decl. ¶ 4).) The Court is not persuaded by Schutt's novel

attempt to narrow the relevant evidence for the purpose of strengthening its venue position. Were

the Court to hold Schutt to the statement that the only evidence needed in this case is a football

helmet, it is unlikely that Schutt would be able to prove its eventual damages case. Unless Schutt

intends to prove infringement but forego damages, and Schutt has given no such indication,

Riddell's financial documents are relevant and are located in Illinois. Further, Plaintiffs' one-sided

---

[11] This Court is often presented with arguments that in today's digital world the proper weight to be given to the physical location of paper documents should be minimal. However, notwithstanding the logic of such arguments, the Circuit Court has yet to provide precise guidance in this regard. Accordingly, this Court continues to treat this factor on an equal par with the remaining factors.

argument would impermissibly block Riddell from relying on any of its own documents. In short, this argument is "off-sides."

As to financial documents, Schutt reasons that not all of Defendant's financial documents can be in Illinois, given that Riddell states that its sales representatives send purchase orders to Defendant's facility in Ohio. (Dkt. No. 15 at 15 (citing Ide Decl. ¶ 11).) However, even if Riddell has documents in Ohio, Ohio is closer to Illinois but is a considerable distance from Texas.

In sum, Defendant has identified relevant documents and physical evidence in Illinois. Notably, no party has pointed to relevant documents or other evidence in this District. Accordingly, the Court finds that this factor weighs in favor of transfer.

### 2.  *Availability of compulsory process*

The second private interest factor pertains to a court's ability to compel attendance of witnesses, particularly non-party witnesses. Riddell states that this factor is neutral, as the non-party witnesses identified at this point in the case do not appear to be within the subpoena power of either this District or the Northern District of Illinois. (Dkt. No. 7 at 19.) Plaintiffs agree. (Dkt. No. 15 at 18 n.21.) Accordingly, this factor is neutral.

### 3.  *Cost of attendance for willing witnesses*

The third private interest factor is the cost of attendance for willing witnesses. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05. However, as other courts in this Circuit have noted, the convenience of *party* witnesses is given less weight. *ADS Sec. L.P. v. Advanced Detection Sec. Servs., Inc.*, No. A-09-CA-773-LY, 2010 WL 1170976, at *4 (W.D. Tex.

Mar. 23, 2010), report and recommendation adopted in A-09-CA-773-LY (Dkt. No. 20) (Apr. 14, 2010) ("[I]t is unclear whether Defendant is contending that the transfer would be more convenient for non-party witnesses or merely for their own employee witnesses. If the Defendant is referring to employee witnesses, then their convenience would be entitled to little weight."). *See also Vassallo v. Goodman Networks, Inc.*, No. 5:14-cv-743-DAE, 2015 WL 502313, at *4 (W.D. Tex. Feb. 5, 2015) (noting that the convenience of non-party witnesses is given more weight in the transfer analysis than the convenience of party witnesses); *Summit 6 LLC v. HTC Corp.*, No. 7:14-cv-0014-O, 2014 WL 4449821, at *7 (N.D. Tex. Sept. 10, 2014) (same); *RPost Holdings, Inc. v. StrongMail Sys., Inc.*, No. 2:12-cv-515-JRG, 2013 WL 4495119, at *4 (E.D. Tex. Aug. 19, 2013) (same).

Riddell names six employee witnesses with knowledge regarding the accused products. (Ide Decl. ¶ 8; Dkt. No. 7 at 18.) Riddell also contends that Schutt's likely witnesses will be closer to Chicago than they are to Marshall. (Dkt. No. 7 at 18.)

As to third-party witnesses, Riddell emphasizes that the majority of the inventors named on the asserted patents live closer to Chicago than they do to Marshall. (Dkt. No. 7 at 18–19.) Riddell admits, however, that it does not have current addresses for these individuals. (Dkt. No. 7 at 4 n.2.) Schutt responds by listing the eleven inventors and their proximity to each District, supported by exhibits indicating each individual's residence. (Dkt. No. 15 at 16; Exs. 1–33, Dkt. Nos. 18-1–18-33.) Based on this information, Schutt argues that, overall, the travel distance for these witnesses balances out when comparing the two Districts. (*See* Dkt. No. 15 at 16 (demonstrating that the Eastern District of Texas is over 800 miles closer than the Northern District of Illinois for certain witnesses, but that the Northern District of Illinois is over 600 miles closer for at least one

witness).) Defendant Riddell attempts to turn this table against Schutt by noting that for most of the inventors, the Northern District of Illinois is closer than the Eastern District of Texas. (Dkt. No. 20 at 9.) Riddell is technically correct—for six witnesses, the Northern District of Illinois is closer, and for five witnesses, the Eastern District of Texas is closer. (*See* Dkt. No. 15 at 16.) However, the distance that each individual would need to travel varies greatly. Having considered the distances from such chart, the Court agrees with Schutt that, on balance, the travel distances are comparable with respect to each District.[12]

Although the Court properly gives the convenience of employee witnesses less weight, the Court notes that in this case the locations of the non-party witnesses, on balance, do not favor one district over the other. Accordingly, in this case, the Court finds that this factor slightly favors transfer based on the presence of employee witnesses in the transferee district.

### 4. All other practical problems

The final private interest factor pertains to "all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013). Here, the Court is presented with a unique situation. Currently pending in the Northern District of Illinois is a case filed by Defendant Riddell, alleging that helmets sold by one of the Plaintiffs in this case infringe three of Riddell's patents. (Dkt. No. 15 at 19.) In addition to involving the same parties, the Illinois case pertains to related football helmet technology. (Dkt. No. 20 at 10.) In that

---

[12] Riddell also mentions in passing that the law firms that prosecuted the asserted patents have no offices in Texas, but are instead located in Tennessee, North Carolina, and New York. (Dkt. No. 7 at 9 (citing Hanewicz Decl. Exs. 4, 5).) Schutt responds that the law firm that prosecuted the provisional application related to one of the asserted patents is located in Houston, Texas. (Dkt. No. 15 at 17 n.18.) Without further information with respect to the likelihood that any of these prosecuting attorneys should testify, the Court does not give weight to these arguments. *See BMC Software, Inc. v. ServiceNow, Inc.*, No. 2:14-cv-903-JRG, 2015 WL 2061932, at *5 (E.D. Tex. Apr. 30, 2015) ("[B]ecause patent prosecuting attorneys are rarely called to trial, the Court gives little weight to the cost of attendance to the patent prosecuting attorneys.").

case, the Illinois Court has issued a claim construction ruling regarding terminology that Riddell alleges to be similar to the language recited in the claims asserted in this case. (Dkt. No. 7 at 20.) However, the Illinois case involves a different family of patents and different accused products. (Dkt. No. 15 at 19.)

Riddell argues that the claim construction process in the Illinois case would help advance resolution of this case. However, Riddell does not explain why a claim construction order regarding a different, unrelated set of patents could be used to expedite the *Markman* process in this case. The Illinois case involves a different family of patents, owned by a competitor. The only similarity between the two cases is that they both involve the same general football helmet technology. As this Court has previously explained:

> While it is true that the existence of a closely related case can weigh in favor of transfer, sometimes heavily so, *see, e.g., Princeton Digital Image Corp. v. Facebook, Inc.*, No. 2:11-cv-400-JRG, 2012 WL 3647182, at *4 (E.D. Tex. Aug. 23, 2012), a case is not "related" simply because it involves some of the same parties or the same general technology. To materially impact the transfer analysis, such a case must involve sufficiently similar issues such that proceeding simultaneously in different courts could lead to "wastefulness of time, energy and money that § 1404(a) was designed to prevent." *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009).

*Allergan Sales, LLC v. UCB, Inc.*, No. 2:15-cv-1001-JRG-RSP, 2016 WL 8201783, at *2 (E.D. Tex. Nov. 2, 2016). The generalized similarities between these two cases do not tip this factor in favor of transfer. Accordingly, this factor remains neutral.

### iii.  Public Interest Factors

#### 1.  *The administrative difficulties flowing from court congestion*

Riddell argues that the first public interest factor regarding court congestion is neutral. (Dkt. No. 7 at 21.) Schutt, however, contends that this factor weighs against transfer because the

median time-to-trial in this District for patent cases is almost a year faster than the comparable time-to-trial in the Northern District of Illinois. (Dkt. No. 15 at 20.) Some courts have considered time-to-trial to be a relevant consideration in the transfer analysis. *See, e.g.*, U*niloc USA, Inc. v. Distinctive Dev. Ltd.*, 964 F. Supp. 2d 638, 651 (E.D. Tex. 2013) (finding that a six-month shorter time-to-trial in the transferor district weighed against transfer). While Defendant argues that the Illinois court may be able to expedite its consideration of the case given its familiarity with the general area of technology, the Court finds this argument speculative. As discussed above, the Illinois case concerns different patents and different accused products. There is little reason to believe that a general familiarity with football helmet technology will serve to expedite the time-to-trial in a tangentially related case. As such, this factor weighs against transfer.

### 2. *Local interest in having localized interests decided at home*

It may be true that, in Texas, football is king. According to Plaintiffs' Amended Complaint, more high school students play football in Texas than in any other state. (Am. Compl. ¶ 17.) The Court knows no Texans that would dispute this point. However, ultimately, the Court is persuaded that the residents of northern Illinois have a stronger interest in this particular patent dispute than do the residents of this District. Although the Court agrees with Schutt that a defendant's residence does not on its own establish a localized interest in a dispute, in this case, there is more at play than mere residency. Riddell's principal place of business is in the Northern District of Illinois. Moreover, the research, design, and development of the accused helmets occurred in that District. (Dkt. No. 7 at 21.) *See In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) (noting that a district had a localized interest where the accused product was developed and tested in the district and where "the cause of action call[ed] into question the work and reputation of

several individuals residing in or near that district and who presumably conduct business in that community").

Although Schutt argues that this District has an especially strong interest in this case, given that the accused technology relates to football, the same could be said of "anyplace in this vast land where, on a Friday night, a set of spindly stadium lights rises to the heavens to so powerfully, and so briefly, ignite the darkness." H.G. Bissinger, *Friday Night Lights*, Prologue xiv (De Capo Press, 25th Anniv. ed. 2015). Statements of localized interest which ring true in districts across the nation fall within that genre of arguments previously rejected by the Fifth Circuit, and this Court does not find Schutt's argument persuasive in this case. *See Volkswagen II*, 545 F.3d at 318. A recognized passion for football in Texas does not alter the proper analysis which fidelity to the law requires. This factor favors transfer.

### 3. *Remaining public interest factors*

The Parties agree that the remaining two public interest factors (the avoidance of unnecessary conflicts of law and the familiarity of the forum with the governing law) are neutral. (Dkt. No. 7 at 21; Dkt. No. 15 at 20 n.26.) The Court agrees.

## IV.    CONCLUSION

Having considered the governing statute, applicable precedents, and the relevant convenience factors, the Court finds that Defendant has satisfied its heightened burden to demonstrate that the transferee district is a clearly more convenient forum for this particular case. Accordingly, this case is hereby **ORDERED TRANSFERRED** to the Northern District of Illinois.

**So ORDERED and SIGNED this 28th day of August, 2017.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE