IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KRANOS IP CORPORATION,<br>KRANOS IP III CORPORATION,<br>and KRANOS CORPORATION<br>d/b/a SCHUTT SPORTS,<br><br>    Plaintiffs,<br><br>vs.<br><br>RIDDELL, INC.,<br><br>    Defendant. | Case No. 17 C 6802 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Kranos IP Corporation, Kranos IP III Corporation, and Kranos Corporation d/b/a Schutt Sports (collectively "Schutt") have sued Riddell, Inc. for patent infringement. Riddell has counterclaimed alleging, in count two, that one of the patents it is accused of infringing is unenforceable due to inequitable conduct during its prosecution. Schutt has moved to dismiss count two of the counterclaim for failure to state a claim. For the reasons stated here, the Court grants Schutt's motion.

### Background

In assessing Schutt's motion to dismiss, the Court assumes the truth of the counterclaim's factual allegations but not its legal conclusions. *See Smoke Shop, LLC v. United States*, 761 F.3d 779, 785 (7th Cir. 2014). The background presented here reflects the Riddell's factual allegations as presented in its counterclaim and brief. *See Meade v. Moraine Valley Cmty. Coll.*, 770 F.3d 680, 682 (7th Cir. 2014).

Schutt and Riddell are corporations that manufacture and sell protective sports equipment, including football helmets. In June 2017, Schutt filed suit against Riddell in the United States District Court for the Eastern District of Texas alleging infringement of three of its helmet-related patents. Among other allegations, Schutt accused Riddell of manufacturing several helmets that infringed U.S. Patent No. 8,499,366, for a "Helmet with Shell Having Raised Central Channel" (the '366 patent). The Texas court granted Riddell's motion to transfer the case to this district.

Riddell's second amended answer includes a two-count counterclaim. In count 2, Riddell alleges that the '366 patent is unenforceable due to inequitable conduct by Schutt during its prosecution of claim 14 of the patent. Schutt has moved to dismiss that counterclaim for failure to state a claim. See Fed. R. Civ. P. 12(b)(6).

To understand the counterclaim, it is necessary to briefly recount the prosecution history of claim 14. Before it issued as claim 14 of the '366 patent, the disputed material was claim 16 of U.S. Patent Application No. 13/469,981 (the '981 application).[1] Although the language in the patent is far lengthier and more precise, it is enough to understand at the outset that claim 14 (née 16) describes a football helmet with a "raised central channel" on top, among other features. Schutt's first patent application, including this claim, was denied by the United States Patent and Trademark Office (PTO) as anticipated by U.S. Patent Application Publication No. 2005/0278835 ("Ide"). The examiner determined that the Ide specification "disclosed a football helmet that satisfied every limitation recited in original claim 16, including a top portion having a

---

[1] Quoted material that refers to "claim 16" therefore can be understood as describing claim 14's various pre-issuance forms.

2

raised central channel with elongated vented openings on either side." Def.'s Br. in Opp'n to Mot. to Dismiss, dkt. no. 71, at 3.

So Schutt tried again. It filed an amendment that modified the claim "to add a limitation requiring that 'a front portion of the central channel is at the front edge'" of the football helmet's shell. *Id.* (quoting Counterclaim ¶ 20). That is, the raised central channel would now remain raised all the way to the front of the helmet. Schutt believed that this addition sufficiently distinguished its claim from Ide because Ide's raised central channel tapered so that it was flush with the helmet's shell before reaching the helmet's front edge.

The PTO again rejected the application. The examiner concluded that the amended claim was rendered obvious by Ide combined with another patent, U.S. Patent No. 5,732,424 ("Monica"). Monica is another helmet patent, which includes "a raised central portion [] that extends to the front edge of the shell." *Id.* In the patent examiner's view, a person of ordinary skill in the art "would have been motivated to combine Ide and Monica to obtain the helmet recited" in the amended claim. *Id.* at 4.

Schutt amended its claim once more to include a further limitation. This time, it added that the helmet's "raised central channel defines a depression in the inner side of the shell with respect to the other portions of the inner side of the shell, the depression in the inner side of the shell within the raised central channel containing shock absorbing material." Counterclaim ¶¶ 26-27. In simpler terms, the raised central channel Schutt claimed now corresponded to a concave area on the inside of the helmet filled with padding. Schutt argued that neither Ide nor Monica taught this limitation. The examiner agreed and issued a notice of allowance for the claim.

Riddell alleges that Schutt overcame this final hurdle by unlawful means. Specifically, it alleges that one of its products, the Riddell Revolution helmet, would have (in combination with Monica) rendered claim 14 obvious if it had been disclosed to the PTO examiner. Like Ide, the Revolution helmet includes a raised central channel. In fact, the two are so alike that, the parties agree, Ide "generally depict[s]" the Riddell Revolution helmet. Counterclaim ¶ 51. But critically, Riddell alleges, the Revolution's raised central channel also "defines a depression in the inner side of the shell," a feature not taught by Ide. Def.'s Br. in Opp'n to Mot. to Dismiss, dkt. no. 71, at 5. Moreover, it alleges that the Revolution "includes shock absorbing material (padding) that extends across the depression" and that the padding occupies "the same"—or at least very similar—configuration as products that Schutt contends infringe claim 14. *Id.*

In sum, the Revolution and claim 14 share (1) a raised central channel; (2) a depression defined by the underside of that channel; and (3) padding arranged in relation to the depression. Riddell concedes that the Revolution's padding "extends across the depression" and "is *not* contained within the depression," whereas claim 14's padding is contained within the depression. *Id.* at 5 (emphasis in original). But several of Riddell's products that it alleges have padding arrangements that are "the same" or similar to the Revolution's now stand accused by Schutt of infringing claim 14. *Id.* Thus, in Riddell's view, Schutt's allegations indicate that the Revolution would have rendered claim 14 obvious in view of Monica.

Riddell accuses four individuals of violating their duties of candor the PTO by failing to bring the Revolution to the patent examiner's attention. Kenneth Nimmons, Larry Maddux, and Ray Drake are named inventors on the '366 patent, and Robert Erb

4

is Schutt's CEO and played an "active, substantive role in the prosecution" of claim 14. *Id.* at 6. Riddell alleges that each of the four was familiar with the Riddell Revolution—either through competitive testing or examination of the helmet—at the time of the relevant patent prosecution. *Id.* at 6-7. And each of the four named individuals "stood to benefit from the issuance of the '366 patent." *Id.* at 7. Finally, Riddell alleges, none of the four brought the Revolution helmet to the attention of the PTO during prosecution of claim 14.

## Discussion

The Seventh Circuit's standard for Rule 12(b)(6) motions controls. *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1318 (Fed. Cir. 2009) (noting that, in inequitable conduct claims, "procedural matter[s are] governed by the law of the regional circuit"). As indicated earlier, at this stage, the Court assumes the truth of a counterclaim's factual allegations but not its legal conclusions. *See Smoke Shop, LLC*, 761 F.3d at 785. To withstand motion a motion to dismiss, the counterclaim "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). That is, the claimant "must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate." *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016) (internal quotation marks omitted).

Although Seventh Circuit law controls the standard of review, Federal Circuit precedent governs whether the facts alleged amount to inequitable conduct under the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See*

5

*Exergen*, 575 F.3d at 1326 ("[W]e apply our own law, not the law of the regional circuit, to the question of whether inequitable conduct has been pled with particularity under Rule 9(b)."); Fed. R. Civ. P. 9(b). The Federal Circuit has established a demanding standard for pleading inequitable conduct. It described the doctrine as the "atomic bomb of patent law" due to its draconian effects on patent holders' property rights. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1288-89 (Fed. Cir. 2011) (citation omitted). "[I]nequitable conduct regarding any single claim," the court explained, "renders the entire patent unenforceable" and "may even spread from a single patent to render unenforceable other related patents and applications in the same technology family." *Id.* at 1288. Courts must therefore scrutinize inequitable conduct claims carefully, "lest inequitable conduct devolve into a magic incantation to be asserted against every patentee." *Exergen*, 575 F.3d at 1331 (citation omitted).

Nevertheless, "[e]ach individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the [PTO], which includes a duty to disclose to the Office all information known to that individual to be material to patentability." 37 C.F.R. § 1.56(a). And a breach of that duty may amount to inequitable conduct. An inequitable conduct claim has two elements: "(1) an individual associated with the filing and prosecution of a patent application . . . failed to disclose material information" to the PTO and "(2) the individual did so with a specific intent to deceive the PTO." *Exergen*, 575 F.3d at 1327 n.3. Importantly, "[i]ntent and materiality are separate requirements. A district court should not use a 'sliding scale,' where a weak showing of intent may be found sufficient based on a strong showing of materiality, and vice versa." *Therasense*, 649 F.3d at 1290.

6

A.   **Materiality**

To sufficiently plead inequitable conduct under Rule 9(b), a claimant must set forth with particularity the "who, what, when, where, and how of the material misrepresentation or omission committed before the PTO."[2] *Exergen*, 575 F.3d at 1327 (citing *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)).  Riddell has failed to plead with sufficient particularity the "how" element under *Exergen*.  To satisfy this element of the Rule 9(b) standard, a claimant must explain "'how' an examiner would have used [the allegedly material] information in assessing the patentability of the claims."  *Id.* at 1330.  Specifically, "the materiality required to establish inequitable conduct is but-for materiality."  *Therasense*, 649 F.3d at 1291; *cf. Sloan Valve Co. v. Zurn Indus., Inc.*, No. 10-cv-204, 2012 WL 1108129 (N.D. Ill. Apr. 1, 2012) (applying the but-for materiality standard described in *Therasense* to a motion to dismiss).  To carry its initial burden, therefore, Riddell must allege facts giving rise to a reasonable inference that the PTO would have rejected Schutt's application had the named individuals brought the Riddell Revolution to its attention.

Riddell offers only a list of conclusory allegations alongside references to Schutt's litigation positions in the present suit.  Take two illustrative paragraphs from the counterclaim:

> 56.    With knowledge of the Riddell Revolution helmet, the examiner would not have allowed claim 16 of the '981 application because, **according to Schutt's infringement positions taken in this litigation**, the Revolution helmet discloses the limitations added by [Schutt's second] amendment . . . relating to the depression on the inner side of the shell containing shock absorbing material . . . . **If Schutt**

---

[2] The Court notes that both parties also referred in their briefs to an additional "why" element.  But that factor is not included in the requirements listed in *Exergen*, 575 F.3d at 1327.  And, in any case, this element is not material here.

7

> **believes that claim 14 of the '366 patent covers the configuration of the padding and depression on the inner side of the accused helmets**, [the four named individuals] had a duty to inform the examiner during prosecution that the same language . . . covered the same relative configuration in the prior art Riddell Revolution helmet.
>
> 57.    With knowledge of the prior art Revolution helmet, the examiner would have rejected claim 16 of the '981 application as obvious over the Revolution helmet and Monica at least because those two pieces of prior art together disclose every limitation of **that claim as now asserted by Schutt** . . . .

Counterclaim ¶¶ 56-57 (emphasis added). Riddell's argument boils down to a confused estoppel theory: because Schutt *now* claims an expansive reading of claim 14, its agents had a duty *several years ago* to disclose all prior art falling within that expansive reading.

But, beyond asking the Court to ignore the passage of time, Riddell's allegations fundamentally fail to address the most important actor to the "how" analysis: the patent examiner. When pleading how omitted prior art is material, a claimant must allege facts that lead to the conclusion that *the examiner* would have denied the application has she been aware of the omitted prior art reference. *See Therasense*, 649 F.3d at 1292 ("[P]rior art is but-for material if *the PTO* would not have allowed a claim had it been aware of the undisclosed prior art." (emphasis added)). In other words, the examiner's perspective controls. And Schutt's alleged plan to assert an expansive view of claim 14 in later litigation simply is not, without more, probative of whether the examiner would have concluded that the Revolution helmet precluded claim 14 for obviousness. *See MadGrip Holdings, LLC v. W. Chester Holdings, Inc.*, No. 16-cv-272, 2017 WL 4335028, at *5-6 (D. Vt. Sept. 27, 2017) (a patentee's silence during patent prosecution despite knowledge that its reading of a claim was more expansive than the patent examiner's did not support a materiality finding in a later inequitable conduct counterclaim); *ESCO*

*Corp. v. Cashman Equip. Co.*, 148 F. Supp. 3d 1051, 1067 (D. Nev. 2016) (an inequitable conduct counterclaim based on the patentee's reading of a claim in later litigation could not survive a motion to dismiss without additional facts).

This is not to suggest that Schutt's present litigation position is wholly immaterial to the question of knowledge and intent or, as Schutt argues, that it "cannot, as a matter of law, support a finding that the named [individuals] committed inequitable conduct before the PTO." Pl.'s Br. in Supp. of Mot. to Dismiss, dkt. no. 68, at 6 (citing *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1370 n.10 (Fed Cir. 2008); *Aptix Corp. v. Quickturn Design Sys., Inc.*, 369 F.3d 1369, 1378 (Fed. Cir. 2001)). Schutt's assertion in this regard is unsupported by its readily distinguishable citations. To the contrary, Schutt's litigation positions *could* be probative *if* there were facts alleged that sufficiently connected them to the alleged misdeeds before the PTO. The counterclaim simply includes no such allegations.

Viewing the counterclaim's factual allegations in the light most favorable to Riddell, there are no allegations that sufficiently address how the PTO would have assessed the Revolution helmet in relation to claim 14. The allegations thus do not permit a reasonable inference that the Revolution helmet was but-for material to claim 14 from the examiner's perspective. Consistent with this reading, the Court overrules Riddell's argument that it "is entitled to proceed with discovery" unless Schutt "comes forward with indisputable evidence that its thinking on [the scope of the claim] has evolved over time." Def.'s Br. in Opp'n to Mot. to Dismiss, dkt. no. 71, at 9. Riddell's effort to shift its burden to Schutt when it has not yet satisfied Rule 9(b)'s pleading requirements is unsupported and therefore fails.

### B. Intent

"To prevail on a claim of inequitable conduct, the accused infringer must prove that the patentee acted with the specific intent to deceive the PTO." *Therasense*, 649 F.3d at 1290. "[A] pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Exergen*, 575 F.3d at 1328-29. The Federal Circuit has further clarified that this standard requires allegations "that the applicant [1] knew of the reference, [2] knew that it was material, and [3] made a deliberate decision to withhold it." *Therasense*, 649 F.3d at 1291.

Schutt cites pre-*Exergen* authority and a pair of district court cases decided soon after *Therasense* to argue that specific intent must be the "single most likely" inference to survive a motion to dismiss. *See* Pl.'s Br. in Supp. of Mot. to Dismiss, dkt. no. 68, at 13-14 (citing *Star Scientific*, 527 F.3d at 1366; *Pfizer Inc. v. Teva Pharm. USA, Inc.*, 803 F. Supp. 2d 409, 435 (E.D. Va. 2011); *VDF FutureCeuticals, Inc. v. Sandwich Isles Trading Co., Inc.*, No. 11-cv-288, 2011 WL 6820122, at *6 (D. Haw. Dec. 27, 2011)). Its contention is contrary to the overwhelming weight of authority. As Judge Wayne Andersen has explained, "[d]eceptive intent must be the 'single most reasonable inference' in order to meet the *clear and convincing* standard required to prevail on the *merits*, but at the *pleading* stage, an inference of deceptive intent simply must be 'reasonable,' meaning that it must be 'plausible and [ ] flow[ ] from the facts alleged.'" *Itex, Inc. v. Westex, Inc.*, No. 05 C 6110, 2010 WL 2901793, at *2 (N.D. Ill. July 21,

2010) (emphasis in original) (quoting *Exergen*, 575 F.3d at 1329 n.5); *see also Delano Farms Co. v. Cal. Table Grape Comm'n*, 655 F.3d 1337, 1350 (Fed. Cir. 2011) (applying the *Exergen* standard to pleadings after the *Therasense* decision).

At the outset, the Court notes that Riddell has sufficiently alleged that each of the four named individuals was aware of the Revolution helmet. But this knowledge alone cannot support an allegation of deceptive intent. *See Optium Corp. v. Emcore Corp.*, 603 F.3d 1313, 1321 (Fed. Cir. 2010); *cf. Therasense*, 639 F.3d at 1276 ("Proving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive."). Indeed, Riddell has failed to allege facts from which a reasonable factfinder could infer either that the named individuals knew the Revolution helmet was material or that they deliberately chose to withhold the information from the PTO.

Cases finding factual allegations sufficient to infer that a specific individual knew omitted information was material require far more than Riddell has alleged here. For instance, in *Delano Farms*, a case about patents on grape varieties, the counterclaimant alleged that a specific individual who was involved in prosecuting the disputed patent "had detailed knowledge that the [plaintiff] had gone out of its way to seek out information regarding widespread prior use of the patented varieties, had learned of multiple instances of such use, and had encouraged those in possession of the patented varieties to cease such use." *Delano Farms*, 655 F.3d at 1350. Further, it alleged that this same individual had discussed with others his understanding "that public uses and sales of new varieties prior to seeking patent protection could jeopardize the Commission's patenting program." *Id.* (internal quotation marks omitted).

Here, in contrast, Riddell offers no facts from which to reasonably could infer that the named individuals were aware of the Revolution helmet's materiality at the time of claim 14's prosecution.  It would be unreasonable, for instance, to infer that they knew it was material from their employer's positions taken in litigation several years after the claim's prosecution.  The counterclaim insufficiently pleads the named individuals' knowledge of materiality as required under the controlling specific intent standard.

Finally, even if knowledge of materiality were no obstacle, Riddell has alleged no facts from which one reasonably could infer that the four named individuals made deliberate decisions to withhold the information from the PTO.  Beyond legal conclusions—e.g., that each named individual "deliberately withheld" the information— the only facts that Riddell alleges on this point are that each of the four named individuals "stood to benefit" from the issuance of the patent.  Counterclaim ¶¶ 64, 70, 78, 84.  But virtually everyone involved in a patent's prosecution stands to benefit in some way from its issuance—the inventor gains a property right, the lawyer improves her reputation and earns repeat clients.   By this contention's logic, "any individual may reasonably be suspected of fraud on behalf of his employer."  *Int'l Test Solutions, Inc. v. Mipox Int'l Corp.*, No. 16-cv-00791-RS, 2017 WL 2118314, at *8 (N.D. Cal. May 16, 2017).  The counterclaim entirely fails "to explain why these ordinary economic circumstances would plausibly induce fraud on the PTO."  *Id.*  If the Court were to accept such a truism as a basis from which deliberate intent to deceive the PTO could properly be inferred, "inequitable conduct [would] devolve into a magic incantation to be asserted against every patentee[,] its allegation established upon a mere showing that art or information having some degree of materiality was not disclosed."  *Exergen*, 575

12

F.3d at 1331. That outcome would be contrary to law, and accordingly the Court rejects it.

## Conclusion

For the foregoing reasons, the Court grants Schutt's motion to dismiss [dkt. no. 67] and dismisses Count 2 of Riddell's counterclaim for failure to state a claim.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: September 12, 2018