**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RIDDELL, INC., | ) | |
| Plaintiff, | ) | No. 16-cv-4496 |
| | ) | |
| v. | ) | Judge Matthew F. Kennelly |
| | ) | |
| KRANOS CORPORATION d/b/a | ) | |
| SCHUTT SPORTS, | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| KRANOS IP CORPORATION, | ) | |
| KRANOS IP II CORPORATION, | ) | No. 17-cv-6802 |
| KRANOS CORPORATION DBA | ) | |
| SCHUTT SPORTS, | ) | |
| Plaintiffs, | ) | Judge Matthew F. Kennelly |
| v. | ) | |
| | ) | |
| RIDDELL, INC., | ) | |
| Defendant. | ) | |

**RIDDELL, INC.'S OPPOSITION TO SCHUTT'S MOTION TO SHOW CAUSE**

Schutt's Motion to Show Cause (ECF No. 299) ("Motion")—filed without notice or conferring with Riddell's counsel—is a baseless attack on Mr. Carreyn over what amounts to an innocent, harmless mistake. Importantly, the conduct of which Mr. Carreyn is accused has nothing to do with this case, and nothing to do with Riddell. The conduct likewise has nothing to do with any confidential technology or information that Schutt has made available in this case. Instead, the protective order entered in this case and in the related *Schutt v. Riddell* case ("the Schutt cases") includes a broad prosecution bar that prohibits any person who reviews highly confidential material of the other party from participating in patent prosecution activities relating to protective helmet and fastener design. The bar is not expressly limited to football helmets and fastener designs. As explained below, when signing off on the protective order, Mr. Carreyn failed to appreciate the potential breadth of the clause, thinking that because he did not prosecute patents for Riddell (or any other football-helmet company) that a prosecution bar would never create an issue. And Mr. Carreyn, admittedly mistakenly for which he takes responsibility, had in mind that only Riddell prosecution work or other football-helmet-related prosecution work were prohibited.

When he later prosecuted completely unrelated patent applications directed to helmets for other clients, the prosecution bar regrettably never crossed his mind. Mr. Carreyn admits this was a mistake, albeit an innocent one that has resulted in absolutely no harm to Schutt (and no benefit to Riddell or anyone else). And, while Mr. Carreyn may have made an honest mistake, Schutt's unfounded attacks on his character and requests for grossly excessive sanctions are far more offensive than anything Mr. Carreyn has done.

With respect to the substance of Schutt's contentions, Schutt has identified three non-Riddell patent applications, each of which is directed to non-football-helmet technology, with

which Mr. Carreyn has had limited involvement since the protective order was entered in November 2016 (collectively the "Prosecution Matters"). Of note, the applications establishing priority for these three applications were filed *before* this litigation was filed. Thus, they could not possibly include highly confidential information provided by Schutt *at a later date*. Regardless, none of these applications is directed to subject matter relating to, or even suitable for, football helmets (or other features at issue in the Schutt cases). Rather, the Prosecution Matters are directed to hockey helmets that are longitudinally adjustable to accommodate different head sizes, and to a catcher's helmet including a front section that pivots away from a rear section to facilitate quick removal.

Nonetheless, the broad language of the prosecution bar arguably restricts these prosecution activities, the details of which are included in Mr. Carreyn's declaration submitted with this response. Because he has provided all relevant details, there is no need for further discovery on this issue. Further, Schutt filed its Motion without any notice or request to meet-and-confer as required under Local Rule 37.2. Accordingly, Riddell and its counsel respectfully request that the Court deny Schutt's request for discovery, as well as the myriad other forms of relief that Schutt requests in its Motion.

I. **FACTUAL BACKGROUND**

   A. **Mr. Carreyn's Background and Patent Prosecution Work.**

Mr. Carreyn has been practicing law for over 18 years, focusing primarily on patent prosecution and litigation. Carreyn Decl. ¶ 1. While he has worked for sporting-goods companies for about 17 years, he has done relatively limited work on helmets. *Id.* ¶ 2. Notably, he has never prosecuted patents for Riddell or for any other football-helmet company. *Id.* ¶ 3.

Mr. Carreyn has never previously been subject to an ethics complaint, the subject of a sanctions motion, or disciplined for misconduct of any kind. *Id.* ¶ 4. On the contrary, Mr.

Carreyn takes the ethical practice of law very seriously—indeed, he currently serves as the loss-prevention partner in the Madison, Wisconsin office of Perkins Coie LLP. *Id.* ¶ 5. In that role, he is responsible for addressing any potential ethical issues or alleged attorney misconduct that arises in that office, as well as reporting those issues to the firm's General Counsel. *Id.*

### B. Helmet-Related Prosecution Work Relevant to Schutt's Motion.

Mr. Carreyn has had limited involvement in the Prosecution Matters since the protective order was entered. *Id.* ¶ 6. Indeed, the priority applications for each of the three applications identified in Schutt's Motion (at 6) had been filed before this litigation was even initiated (i.e., the written description of each of those patents had been established before the onset of litigation). *Id.* ¶ 7. Importantly, none of the Prosecution Matters involves football helmets or is directed to features relevant to the claims at issue in the Schutt litigations, and none incorporates (or even could incorporate) Schutt's highly confidential information. *Id.* ¶ 8.

The first two matters Schutt identifies are Bauer applications (U.S. application no. 15/268,127 and U.S. application no. 15/139,536) directed to hockey helmets including front and rear shell sections that are adjustable relative to each other to adjust fit on a user. Motion at 6; Carreyn Decl. ¶ 9. Both use mechanisms that engage straps to hold the shell sections in place. Carreyn Decl. ¶ 10. These applications have no overlap with the content of the asserted claims in either Schutt case, nor are they related to any of Schutt's highly confidential information. *Id.* ¶ 11.[1] The priority applications supporting each of these applications were filed several years before this litigation was initiated and before the protective order was entered—at least as early as August 13, 2008 (parent to the 15/268,127) and July 13, 2012 (parent to the 15/139,536). Carreyn Decl. ¶¶ 13, 14, Exs. 1 & 2.

---

[1] Indeed, it is doubtful that such an adjustable helmet could even satisfy the safety-testing requirements for use in a football application. Carreyn Decl. ¶ 12.

Notably, the current applications have been prosecuted at the direction of Smart & Biggar, a Canadian law firm that handles Bauer's patent-prosecution matters. Carreyn Decl. ¶ 15. Mr. Carreyn's involvement in these applications has been ministerial in nature, as he is acting only as a foreign agent for Smart & Biggar. *Id.* ¶ 16. As a foreign agent, Mr. Carreyn receives instructions from Smart & Biggar on claims to file, how to amend pending claims, and how to otherwise respond to office actions. His only legal responsibility is to ensure that Smart & Biggar's instructions comply with U.S. patent laws. He does not perform substantive analysis or strategize about claim scope. *Id.*

The third application Schutt identifies (U.S. application no. 15/480,215) is directed to an Easton Diamond Sports catcher's helmet in which the front portion may be pivoted away from the back portion for quick removal of the helmet (to enable the catcher to easily track a popup or retrieve a loose ball.) *Id.* ¶ 17. The claims of this application have no overlap with the asserted claims in either litigation, nor are they related to any of Schutt's highly confidential information. *Id.* ¶ 18. And the priority application in this family was filed on April 8, 2016, before this litigation was instituted and before the protective order was entered. *Id.* ¶ 19.

Finally, Mr. Carreyn has billed a total of 3.0 hours supervising a 2018 filing of a currently unpublished application directed to a helmet used in a non-contact sport. This application also has no overlap with football, the content of the asserted claims in either Schutt litigation, or any of Schutt's highly confidential information. *Id.* ¶ 20.[2]

Mr. Carreyn has not been involved in any other helmet-related prosecution work since the protective order was entered—whether relating to published or unpublished applications of any kind. *Id.* ¶ 21. Schutt's request for discovery is therefore moot.

## II.  ARGUMENT

Schutt's Motion makes completely unsupported, generalized allegations, seeking relief and sanctions not even remotely tethered to any actual or potential harm that could have occurred in this case.  To be sure, given the completely unrelated subject matter and limited involvement of Mr. Carreyn in the Prosecution Matters, Riddell does not believe that any actual or potential harm could exist.  Schutt's Motion does not demonstrate or even suggest otherwise.[3]

Moreover, that Schutt filed its Motion without notice to Riddell or requesting to meet-and-confer is unfortunate, as this could have been easily resolved and prevented the need for briefing.  Indeed, that is the very purpose of the Local Rules.  To that end, Schutt's own violation of those rules undermines its request for the Court to exercise equitable authority against Riddell.  *Jessup v. Nat'l R.R. Passenger Corp.*, No. 00 C 8065, 2001 WL 897578, at *3 (N.D. Ill. Aug. 9, 2001) ("One of the oldest of our jurisprudential maxims teaches 'that he who seeks Equity must do Equity'") (citing Joseph Story, *Commentaries on Equity Jurisprudence* 1:77 (1836)).

### A.  Schutt's generalized and conclusory allegations are insufficient to demonstrate potential, much less actual, harm resulting from unrelated prosecutions.

Mr. Carreyn's prosecution activities for *unrelated parties* having no involvement in the litigations, relating to non-football helmets in which the rear and front portions are intentionally moveable with respect to each other, are plainly irrelevant to the rigid football helmet shells and

---

[2] More specific information concerning this application cannot be divulged until it is published.  Should the Court request further information, however, Mr. Carreyn could seek the necessary consent of the client or supplement this filing after publication.

[3] Indeed, it should be noted that, in its overzealous attempt to accentuate the sensitive nature of the information disclosed to Mr. Carreyn, Schutt begins with the March 28, 2017, 30(b)(6) deposition of Schutt's CEO and General Counsel, Robert Erb.  Contrary to Schutt's counsel's sworn representation (*see* James J. Lukas, Jr. Declaration in Support of Motion to Show Cause (ECF No. 299-1) ("Lukas Decl.") ¶ 5), however, this deposition was never designated Highly Confidential, or even Confidential, under the Protective Order.  Carreyn Decl. ¶ 22.

any highly confidential information at issue in the Schutt litigations. Schutt's vague assertions otherwise are not a substitute for facts.

For example, Schutt contends the Prosecution Matters "relate to similar features disclosed by Schutt's patents and pending patent applications in the protective helmet field and a Schutt football helmet," pasting three helmet pictures into its brief that it contends "depict[] a helmet with similar features." Motion at 9. Yet Schutt does not explain to which "features" it is referring, either in its own helmets or in the unrelated application specifications. And, notably, the Easton PCT drawing that Schutt cites as "evidence" of a helmet similar to a Schutt helmet and to Schutt patents (Motion at p. 9) was included in the priority application filed *before* the Schutt litigations were filed. Thus, any alleged similarity is purely coincidental. Carreyn Decl. ¶ 19.

The Federal Circuit has instructed that these types of vague and conclusory statements are insufficient to demonstrate even *potential* harm, which "turns on 'the extent to which counsel is *involved in competitive decisionmaking with its client.*'" *AmTab Mfg. Corp. v. SICO Inc.*, Case No. 11 C 2692, 2012 WL 195027, *2 (N.D. Ill. Jan. 19, 2012) (emphasis in original) (quoting *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1378 (Fed. Cir. 2010).[4] As the Federal Circuit explained:

> Because patent prosecution is not a one-dimensional endeavor and can encompass a range of activities, it is shortsighted to conclude that every patent prosecution attorney is necessarily involved in competitive decisionmaking. Indeed, denying access to [a party's] outside counsel on the ground that they also prosecute patents for [that party] is the type of generalization counseled against in *U.S. Steel*. The facts, not the category must inform the result. Our holding in *U.S. Steel* dictates that each case should be decided based on the specific facts involved therein.

---

[4] The Federal Circuit defines "competitive decisionmaking" in this context as "shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *Deutsche Bank*, 605 F.3d at 1378 (quoting *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984)).

*Deutsche Bank*, 605 F.3d at 1379 (quoting *Sibia,* 1997 WL 688174, at *3, 1997 U.S.App. LEXIS 31828, at *7). This court has similarly refused to entertain generalized notions of harm with respect to patent-prosecution-bar issues. *See AmTab,* 2012 WL 195027, at *2 ("SICO's arguments are vague and speculative, and … do[] not identify any specific information that would cause it injury if disclosed."); *id.* ("SICO both fails to provide any particular and specific demonstrations of its 'product development information' and does not expound on how SICO's product development information could be claimed by AmTab in a patent application.") (citing *Intellect Wireless, Inc. v. T-Mobile USA, Inc.*, No. 08 C 1215, 2010 WL 192250 (May 12, 2010), (*id.*) providing that "Defendants make only the general statement that, '[c]ertain technical information that [d]efendants have produced in this action … is proprietary.' Such a vague statement is not enough to warrant the unnecessary hardship that would result from the issuance of a patent prosecution bar") *id.*; *Pfizer Inc. v. Apotex Inc.*, 744 F. Supp. 2d 758, 766 (N.D. Ill. 2010) ("In both *Deutsche Bank* and *U.S. Steel*, the Federal Circuit stressed that rigid rules related to competitive decisionmaking must give way to a review of each case's facts.").

The absence of details here is important, as even if Schutt *had* specifically identified features of claimed subject matter that it felt potentially incorporated its highly confidential information, as noted above, the priority application to the catcher's-helmet application at issue was filed *before* the protective order was entered and such information was exchanged. Carreyn Decl. ¶ 19, Ex. 3 at 12. Thus, similar or not, that application simply could not have incorporated any such information. *See* 35 U.S.C. § 132 (addition of new matter by amendment not permitted).

Moreover, the lack of even potential harm is especially pronounced here, given Mr. Carreyn's limited involvement in the Prosecution Matters, and complete lack of influence as to

any "competitive decisionmaking" for the respective clients (as well as having no prosecution involvement with Riddell). As this court has previously recognized, "the [Federal Circuit] noted the broad range of patent prosecution duties of attorneys, noting that those who do not have substantial patent prosecution may be properly exempted from a prosecution bar." *AmTab*, 2012 WL 195027 at *3 (citing *Deutsche Bank* at 1380). And even "[f]or attorneys that 'are more substantially engaged with prosecution' … 'competitive decisionmaking *may* be a regular part of their representation, and the opportunity to control the content of patent applications and the direction and scope of protection sought in those applications may be significant.'" *Id.* (emphasis in original). Thus, in *AmTab*, even though the attorneys at issue engaged in several significant prosecution duties, for which, in the abstract, "'competitive decision-making *may* be a regular [part] of their representation,'" the court declined to find a generalized risk of harm because "[t]he record [t]here clearly indicate[d] that for [the challenged attorneys], it [wa]s not." *AmTab* at *4. Facts reminiscent of Mr. Carreyn's prosecution role were pertinent to this conclusion, the court observing that:

> [The challenged attorneys'] representation begins when AmTab provides disclosures to either [attorney] of an invention that AmTab has already created. Neither [attorney] creates an invention. . . . Next, [the attorneys] provide their opinion to AmTab as to the broadest protection that is legally available for a new AmTab invention. Then, AmTab determines for itself whether that protection is worth pursuing, and if AmTab wishes, [the attorneys] prepare a patent application.
>
> ***
>
> [The challenged attorneys were not] involved in AmTab's sales, marketing decisions or marketing meetings, product design, development decisions, scientific research, pricing of products or services, or production of products. Equally important, no[ne] of the lawyers [we]re AmTab employees, sit on AmTab's Board of Directors or are AmTab officers.

*AmTab* at *4 (internal record citations omitted). Thus, as the "record present[ed] no indicia of competitive decisionmaking such as participation in a client's pricing or product design," the court found an insufficient risk of harm, and that "[i]mposing a prosecution bar on [the challenged attorneys] because they also prosecute patents 'is the type of generalization counseled against' by the Federal Circuit." *AmTab* at *4 (quoting *Deutsche Bank*, 605 F.3d at 1379).

So too here. Mr. Carreyn is likewise not involved in any aspects of competitive decisionmaking, such as those identified in *AmTab,* for the clients of the Prosecution Matters. Carreyn Decl. ¶ 23. Concluding that Schutt has or will be harmed merely because of his tangential involvement in unrelated helmet prosecution is the exact type of generalization courts deem insufficient to even find a *potential* risk warranting a bar (much less an actual injury justifying the extraordinary relief Schutt requests).

### 1. The extreme remedies Schutt requests are unwarranted and unnecessary.

Schutt insists that it "does not yet know the extent to which it has been harmed" by the unrelated Prosecution Matters, and that Mr. Carreyn's actions "appear to be flagrant and willful, warranting his disqualification." Schutt further requests additional discovery to learn of secret hypothesized prosecutions. Motion at 9-13. Neither of these overreactions is warranted on the facts of this case. *See Oleksy v. Gen. Elec. Co.*, No. 6 C 1245, 2014 WL 3820352, at *6-7 (N.D. Ill. Aug. 1, 2014) ("'the sanction imposed must be proportionate to the circumstances.'") (quoting *Collins v. Illinois*, 554 F.3d 693, 696 (7th Cir. 2009)).

First, as demonstrated above, there is no conceivable harm to Schutt from the unrelated prosecutions. To the extent Schutt legitimately believed otherwise, it was incumbent upon it to identify more than a few vague, irrelevant helmet pictures (that existed long *before* the protective order was entered) to explain why. And disqualifying Mr. Carreyn from the litigations—on the

eve of trial no less—would work nothing but an unwarranted punitive result on Riddell (which had no involvement in, knowledge of, or benefit from the unrelated prosecutions for other clients). Carreyn Decl. ¶ 24; *see, e.g.*, *Life Techs. Corp. v. Biosearch Techs., Inc.*, No. C-12-00852 WHA (JCS), 2012 WL 1600393, at *7 (N.D. Cal. May 7, 2012) ("Because the alleged conduct will not have a 'continuing effect' on the proceedings, disqualification is not warranted.'") (citation omitted).

Moreover, Mr. Carreyn's limited prosecution work for non-Riddell clients in different industries was, at most, an unfortunate mistake. Carreyn Decl. ¶¶ 25-27. It certainly does not warrant the extreme sanction of disqualification. *See Zecotech Imaging Sys., PTE. Ltd. v. Saint-Gobain Ceramics & Plastics Inc.*, No. 5:12CV1533, 2014 WL 12597839, at *6 (N.D. Ohio May 23, 2014) ("[F]ind[ing] that disqualification is too harsh a sanction [as] … Although … Mr. Loop's actions constituted a violation of the SPO, his actions were not so egregious as to warrant disqualification"—instead advising that "this Order shall serve as a warning.")

Second, Schutt's request for discovery is not only unnecessary but itself improper and in violation of the Local Rules. Mr. Carreyn's declaration fully describes all arguably relevant prosecution work that Schutt indicates it would need to identify through discovery.[5] And Schutt's request is improper as it is plainly a motion for discovery governed by Local Rule 37.2, yet Schutt did not even attempt to meet-and-confer on the issue. This violation of the rules—by a motion itself alleging violation of different rules—is reason enough to deny it. *See, e.g.*, *In re Trans Union Corp. Privacy Litig.*, 249 F.R.D. 302, 304 (N.D. Ill. 2008) (denying motion for

---

[5] To the extent Schutt blanketly seeks discovery of any Perkins Coie attorneys on the basis of Mr. Carreyn's limited prosecution work, this is also unnecessary and improper (e.g., Motion at 12, hypothesizing about activities of "other Riddell attorneys of record" and even those not of record such as Mr. Brookman). *See U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984) ("whether an unacceptable opportunity for inadvertent disclosure exists … must be determined … *by the facts* on a *counsel-by-counsel* basis.") (emphasis added).

sanctions where movant itself violated local rules with respect to procedure for filing exhibits under seal—"Trans Union's Motion to Enforce Protective Orders is denied. Counsel for the plaintiffs is cautioned to comply with the terms of the Protective Orders in effect in this case. Any future disclosure of Trans Union Financial Information, whether in redacted or unredacted form, beyond that allowed under the Protective Orders will result in the imposition of appropriate sanctions.").

### III. CONCLUSION

Mr. Carreyn submits his personal apology to this Court and certainly will not make the same or any similar mistakes in violating the very broad prosecution bar in the Protective Order, even though they were unintentional, unrelated to Riddell or to any of Schutt's highly confidential information, and caused no damage to Schutt. But for the reasons expressed above, Riddell respectfully requests Schutt's Motion be denied.

- 12 -

Dated: April 16, 2019   PERKINS COIE LLP

By   */s/ Christopher G. Hanewicz*
Rodger K. Carreyn
RCarreyn@perkinscoie.com
Christopher G. Hanewicz
CHanewicz@perkinscoie.com
Michelle Umberger
MUmberger@perkinscoie.com
Gabrielle E. Bina
GBina@perkinscoie.com
Andrew T. Dufresne
ADufresne@perkinscoie.com
Brandon M. Lewis
BLewis@perkinscoie.com
Truscenialyn Brooks
TBrooks@perkinscoie.com
1 East Main Street, Suite 201
Madison, WI 53703
(608) 663-7460 (Phone)
(608) 663-7499 (Facsimile)

Douglas L. Sawyer (ARDC#6275849)
DSawyer@perkinscoie.com
131 South Dearborn Street, Suite 1700
Chicago, IL 60603-5559
(312) 324-8400 (Phone)
(312) 324-9400 (Facsimile)

*Attorneys for Riddell, Inc.*

- 13 -

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on April 16, 2019, a true and correct copy of the foregoing was served via the CM/ECF system upon the following attorneys of record:

James J. Lukas, Jr.
lukasj@gtlaw.com
Benjamin P. Gilford
gilfordb@gtlaw.com
Howard E. Silverman
silvermanh@gtlaw.com
Richard D. Harris
harrisr@gtlaw.com
Matthew J. Levinstein
levinsteinm@gtlaw.com
Callie Sand
sandc@gtlaw.com
Greenberg Traurig, LLP
77 W. Wacker Dr., Suite 3100
Chicago, Illinois 60601

*Attorneys for Defendant, Kranos Corporation d/b/a Schutt Sports*

      By: */s/ Christopher G. Hanewicz*
          *Attorney for Riddell, Inc.*