IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KRANOS IP CORPORATION, KRANOS IP II CORPORATION, and KRANOS CORPORATION, d/b/a SCHUTT SPORTS, <br><br> Plaintiffs, <br><br> vs. <br><br> RIDDELL, INC., <br><br> Defendant. | Case No. 17 C 6802 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Kranos IP Corporation, Kranos IP II Corporation, and Kranos Corporation d/b/a Schutt Sports (collectively "Schutt") sued Riddell, Inc. for infringing three of Schutt's patents. The parties have filed cross-motions for summary judgment. For the reasons set forth below, the Court grants Riddell's motion and denies Schutt's motion.

## Background

Schutt and Riddell both manufacture and sell football equipment, including helmets. Schutt owns three helmet-related patents that it alleges Riddell has infringed: U.S. Patent Nos. 9,498,014, "Protective Helmet" (the '014 patent); 8,499,366, "Helmet with Shell Having Raised Central Channel" (the '366 patent); and 6,434,755, "Helmet" (the '755 patent).

In September 2018, the Court dismissed Riddell's counterclaim, in which Riddell alleged that the '366 patent is unenforceable due to Schutt's inequitable conduct. *See*

*Kranos IP Corp. v. Riddell, Inc.* (*MTD Ruling*), 334 F. Supp. 3d 907 (N.D. Ill. 2018). The Court also issued an opinion construing six terms in the three patents. *See Kranos IP Corp. v. Riddell, Inc.* (*Claim Construction Ruling*), 339 F. Supp. 3d 850 (N.D. Ill. 2018). The Court construed two terms that are particularly relevant to this motion: first, it held that the claim term "outer shell" requires both an inner and an outer shell; and second, it held that the term "offset" is given its plain and ordinary meaning, with the clarification that an offset can be either inward or outward.

Riddell has moved for summary judgment. It contends that the '755 patent is invalid because it is anticipated by prior art and that no reasonable jury could find that Riddell's products infringed the '014 and '355 patents. Schutt has filed a cross-motion for summary judgment of infringement on counts 1 (the '755 patent) and 3 (the '366 patent).

## Discussion

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because the parties have filed cross-motions for summary judgment, the Court "view[s] all facts and inferences in the light most favorable to the nonmoving party on each motion." *Lalowski v. City of Des Plaines*, 789 F.3d 784, 787 (7th Cir. 2015).

The patent infringement analysis has two steps. "The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of infringing." *Duncan Parking Techs., Inc. v. IPS Group, Inc.*, 914 F.3d 1347, 1360 (Fed. Cir. 2019). These

two steps are not always strictly sequential, however, and "[d]istrict courts may engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves." *Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1353, 1361 (Fed. Cir. 2002).

**A.     The '014 patent**

The claims in the '014 patent include the term "outer shell." As noted above, the Court has construed "outer shell" to require both an outer and an inner shell. Riddell contends that it is entitled to summary judgment because no reasonable jury could find that the accused products—Riddell's SpeedFlex model line of helmets—have an inner shell. "[A] grant of summary judgment of noninfringement is proper when no reasonable factfinder could find that the accused product contains every claim limitation or its equivalent." *Medgraph, Inc. v. Medtronic, Inc.*, 843 F.3d 942, 949 (Fed. Cir. 2016).

Schutt contends that there is a genuine dispute regarding whether Riddell's SpeedFlex helmets contain an inner shell. The parties agree that the helmets have a flexible liner that is designed to conform to various head shapes for comfort and stability. Riddell contends that no reasonable jury could find that that this liner constitutes an "inner shell."

**1.     Construction of "inner shell"**

Riddell argues that in the context of football helmets and the '014 patent, a person of ordinary skill in the art would understand an "inner shell" to be a hard, protective covering that distributes an impact load. Schutt contends that the term "inner shell" more broadly refers to any thin layer enclosing a space or surrounding an object.

The parties cite expert testimony in support of each construction. Only Riddell's

expert is persuasive, however, because Schutt's expert, Jonathan Posner, offers purely conclusory opinions. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2015) ("[C]onclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court."). In contrast, Riddell's expert, Nicholas Shewchenko, relies on a scholarly article on the biomechanics of head trauma that explains that the function of a helmet shell is to provide a hard surface which distributes impact loads over a large area. As Shewchenko points out, this interpretation coheres with the ordinary use of the word "shell" as used in terms like "eggshell" or "clamshell," in which a hard exterior protects the interior from impact forces. Posner admitted in his deposition testimony that his broader construction would mean that a pillowcase is a shell for a pillow. The Court cannot reasonably accept such an expansive interpretation in the context of protective headwear without a reliable basis to support it.

Riddell's proposed construction finds further support in the '014 patent itself. The patent repeatedly refers to the inner shell as "hard" or "rigid." *See* '014 Patent, Ex. 1 to Hanewicz Decl., dkt. no. 133-1 at 15. Schutt argues that the language in the '014 patent is not dispositive because it says that a hard or rigid inner shell is "preferable," rather than required. But in the same paragraph the patent states that the "protective helmet is designed to dampen the energy of a jarring impact to the outer shell assembly before reaching the hard inner shell by reducing the g-forces." *Id*. The numerous references to a hard or rigid inner shell in the patent's description of the preferred embodiment evince an intent to limit the claims to a helmet that includes two hard shells. *See, e.g.*, *Boss Indus. v. Yamaha Motor Corp. U.S.A.*, 333 F. App'x 531, 536 (Fed. Cir. 2009) (upholding the district court's construction that was "in accordance with the entirety of

4

each patents' intrinsic evidence," including the preferred embodiments).

Schutt also argues that a broad construction of "shell' is required under the doctrine of claim differentiation. Claim differentiation reflects a "common sense notion that different words or phrases used in separate clams are presumed to indicate that the claims have different meanings and scope." *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1368 (Fed. Cir. 2005). Schutt points to a parent of the '014 patent, which included claims reciting both an "inner shell" and an "inner shell [that] is a rigid shell." Amendment & Resp. to Office Action, dkt. no. 77-3 at 2. This argument is unavailing, however, because claim differentiation "does not serve to broaden claims beyond their meaning in light of the patent as a whole." *Poly-America, L.P. v. API Indus., Inc.*, 839 F.3d 1131, 1137 (Fed. Cir. 2016). In this case, the fact that a related patent contained different claim language has little probative value in light of the clear indications in the '014 patent that the inner shell must be rigid or hard. *Cf. Trs. of Columbia Univ. in City of N.Y. v. Symantec Corp.*, 811 F.3d 1359, 1370 (Fed. Cir. 2016) (holding that because two patents in the same family used different claim language there was "no reason to construe the terms similarly").

Schutt's final argument in support of its proposed construction relies on two unrelated helmet patents that predate the '014 patent. The first—U.S. Patent No. 6,658,671—describes an inner shell that contains both a hard outer layer and a soft inner layer. As Riddell points out, that description bears no resemblance to the flexible liner at issue in this case. The second—U.S. Patent No. 7,328,462—describes an inner shell made of polyethylene or polypropylene foam, materials that appear to be far more rigid than the flexible urethane foam used in the SpeedFlex liner. These previous

5

patents therefore do not support Schutt's expansive construction of the term "inner shell."

It is undisputed that except for some small fasteners, the flexible liner in the accused SpeedFlex helmets is made of material that is soft and malleable. Because a person of ordinary skill in the art would understand that an "inner shell" of a football helmet is hard, no reasonable jury could find that Riddell's SpeedFlex helmets contain an inner shell.

### 2. Doctrine of equivalents

Schutt argues that even if the flexible liner does not constitute an inner shell within the meaning of the relevant claims, there is a genuine dispute about whether the liner is the equivalent of an inner shell. "Under the doctrine of equivalents, a product or process that does not literally infringe a patent claim may nevertheless be held to infringe 'if it performs substantially the same function in substantially the same way to obtain the same result.'" *Duncan Parking*, 914 F.3d at 1362 (quoting *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950)). Schutt contends that a reasonable jury could conclude that the liner in the SpeedFlex helmets is the equivalent of an inner shell and that these helmets therefore infringe the '014 patent.

As the Supreme Court has explained, however, the doctrine of equivalents "must be applied to individual elements of the claim, not to the invention as a whole. It is important to ensure that the application of the doctrine, even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997). Riddell contends that Schutt's argument runs afoul of this restriction by invoking the

doctrine of equivalents to eliminate the requirement that the helmet have both an inner and an outer shell.

The Court concludes that Schutt cannot withstand summary judgment in this case by invoking the doctrine of equivalents. In *SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc.*, 242 F.3d 1337 (Fed. Cir. 2001), the Federal Circuit explained that in cases where the patent "defin[es] the claim in a way that clearly exclude[s] certain subject matter, the patent implicitly disclaim[s] the subject matter that was excluded and thereby bar[s] the patentee from asserting infringement under the doctrine of equivalents." *Id.* at 1346. As the Court noted in its claim construction ruling, the '014 patent implicitly disclaims single-shell helmets. *See Claim Construction Ruling*, 339 F. Supp. 3d at 855. Under *Warner-Jenkinson* and *SciMed Life Systems*, Schutt cannot now rely on the doctrine of equivalents to argue that a single-shell helmet infringes the '014 patent.

For these reasons, the Court concludes that Riddell is entitled to summary judgment on count 2.

**B.    The '366 patent**

Claim 14 of the '366 patent recites a football helmet with a raised central channel "wherein a front portion of the central channel is at the front edge."[1] *See* '366 Patent, Ex. 2 to Hanewicz Decl., dkt. no. 133-2 at 16. The parties agree that the phrase "at the front edge" requires the raised central channel to extend all the way to the front edge of the helmet. Both parties have moved for summary judgment on infringement, with

---

[1] The other asserted claims in the '366 patent—claims 16 and 19—are dependent on claim 14.

Schutt arguing that a reasonable jury must conclude that the accused products meet this limitation and Riddell arguing that a reasonable jury could not.

1.  **SpeedFlex helmets**[2]

No reasonable jury could conclude that the raised central channel on the SpeedFlex helmets extends all the way to the front edge of the helmet. Rather, the central channel extends only as far as a bendable panel in the shell, which ends about two inches from the front edge. After that point, the transition walls that define the raised central channels disappear, and no portion of the shell at the front edge is raised. The following image of the SpeedFlex helmet shows that the raised central channel does not extend beyond the front of the bendable panel:



Schutt cites an image created by its expert, Jonathan Posner, in which Posner highlighted a seemingly arbitrary area at the front of the shell that he labeled the "Front Portion of the Central Channel." The Court can find no basis for characterizing this

---

[2] The discussion in this subsection applies to both the SpeedFlex and SpeedFlex Precision helmets, which the parties agree are materially the same for the purposes of this count.

region of the helmet as part of the raised central channel.  Because Schutt's assertion that the central channel reaches the front edge of the SpeedFlex helmet is plainly without merit, a reasonable jury could not find in its favor.

   2.   360 helmet

The design of Riddell's 360 helmet is comparable to that of the SpeedFlex helmets in that the transition walls that demarcate the raised central channel end about two inches from the front edge of the helmet.  The design of the 360 helmet differs somewhat in that the raised central channel is defined by depressions on either side.  The following image, created by Riddell's expert, shows the depressed surfaces in green:



Shewchenko Report, Ex. 9 to Hanewicz Decl., dkt. no. 134-2 at 46.  As this image shows, the raised central channel terminates at the front of the green-highlighted depressions in the shell.  Schutt offers no evidence to support its contention that the central channel somehow extends beyond that point.  Beyond that point, the central channel cannot reasonably be considered to be "raised."

An additional difference between the 360 helmet and the SpeedFlex helmets is that the shell of the 360 helmet includes a raised portion along the front edge of the

helmet, which the parties refer to as a "bead."[3]  The presence of the bead is not relevant regarding whether the raised central channel on the 360 helmet extends all the way to the front edge, however.  As with the SpeedFlex helmet, the Court concludes that no reasonable jury could find that the 360 helmet meets the limitations of claim 14 of the '366 patent.

### 3. Speed-Shell helmets[4]

The Speed-Shell helmets present a somewhat closer question.  Unlike the SpeedFlex and 360 models, the raised central channel on the Speed-Shell helmets does not terminate about two inches from the front edge of the shell.  Rather, at approximately the same place that the transition walls on the SpeedFlex and 360 models terminate, the transition walls that define the central channel on the Speed-Shell helmet angle outward toward the sides of the helmet.  As they angle outward, the walls fade into the shell and terminate near a bead that borders the helmet's front edge:

---

[3] Schutt apparently disputes that the 360 helmet contains a bead, *see* Schutt's Mem. in Supp. Cross-Mot. for Summ. J., dkt. no. 157 at 18 n.17, but the bead is plainly visible on the front of the helmet.

[4] The Speed-Shell helmets include the following accused models that the parties agree are identical for the purposes of this count:  Speed, Speed Classic, Speed Icon, Speed Classic Icon, Foundation, Speed Youth, Speed Classic Youth, Edge, Revolution Attack, Revolution Attack-I, Victor, and Victor-I.

10



Shewchenko Report, Ex. 9 to Hanewicz Decl., dkt. no. 134-2 at 44. Schutt contends that a reasonable jury could find that the raised central channel continues all the way to the bead and that it therefore reaches the front edge of the helmet.

As with the 360 and SpeedFlex helmets, no reasonable jury could find that the raised central channel on the Speed-Shell helmets extends all the way to the front edge of the shell. The transition walls terminate before reaching the bead such that there is a small space above the bead and below the raised central channel that is not bound by transition walls on either side. And even if a jury reasonably could find that the central channel extends all the way to the bead, the bead is not the front edge of the helmet. Although the bead borders the front edge, the top edge of the bead is almost half an inch from the front of the helmet. A raised central channel that terminates at the top of the bead therefore does not extend all the way to the front edge of the helmet as required to infringe claim 14.

Because no reasonable jury could conclude that any of the accused products infringe the '366 patent, the Court concludes that Riddell is entitled to summary judgment on count 3.

**C.     The '755 patent**

Riddell argues that it is entitled to summary judgment on count 1 because the '755 patent is invalid on the basis of anticipation.[5]  Specifically, it argues that prior art anticipated claim 11, which teaches "[a] helmet, comprising a shell having a rear portion and opposite side portions having ear holes and an offset defined on a substantially continuous portion of the shell extending between the rear and opposite side portions for increasing the flexural resistance of the shell, wherein the offset extends substantially between the ear holes."  '755 Patent, Ex. 3 to Hanewicz Decl., dkt. no. 133-3 at 8.  The party contesting a patent's validity bears the burden of establishing invalidity by clear and convincing evidence.  35 U.S.C. § 282(a); *Microsoft Corp. v. i4i Ltd.*, 564 U.S. 91, 95 (2011); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986) ("[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden.").  "While anticipation is a question of fact, it may be decided on summary judgment if the record reveals no genuine dispute of material fact."  *Leggett & Platt, Inc. v. VUTEk, Inc.*, 537 F.3d 1349, 1352 (Fed. Cir. 2008) (internal quotation marks omitted).

Riddell argues that two helmets, Cooper 50792 and Cooper XL7,[6] anticipated claim 11.  Schutt contends that the Cooper helmets (1) do not disclose an offset, (2) do not disclose an offset that increases the flexural resistance of the shell, and (3) do not disclose an offset that extends substantially between the earholes.

---

[5] Notably, Riddell does not contest that the accused products literally infringe the '755 patent, at least to the extent that the term "offset" is given its plain and ordinary meaning.  *See* Riddell's Resp. to Schutt's L.R. 56.1 Stmt., dkt. no. 164 at 2-3.
[6] The Cooper XL7 helmet is an embodiment of the Cooper 50782.

### 1. Offset

Schutt first contends that the Cooper helmets do not disclose an offset. As previously mentioned, the Court has construed the term "offset" to carry its plain and ordinary meaning, with the clarification that an offset may be either inward or outward—that is, toward the wearer's head or away from it. *Claim Construction Ruling*, 339 F. Supp. 3d at 860. Schutt now argues that an offset must have multiple transition walls, meaning that it is set apart from the neighboring surfaces on either side. It contends that because the alleged offsets on the Cooper helmets border the bottom rear edge of the helmet, no reasonable jury could find that those models disclose an offset.

The Court disagrees with Schutt's proposed construction that would require an offset to be "higher or lower than its neighboring shell surfaces on both sides of the surface." Schutt's Mem. in Supp. Cross-Mot. for Summ. J., dkt. no. 157 at 4. In contrast, Riddell argues that the offset need only lie in a plane above or below a neighboring surface of the shell. The Court has already held that the term "offset" carries its plain and ordinary meaning, and Schutt offers no evidence that would support a narrower construction.

First, Schutt points to various statements by Riddell's experts that suggest that offsets have multiple transition walls—that is, at least two transition walls on opposite sides of the offset. In discussing the raised central band on the accused products, for example, Riddell's expert testified that the central band is an offset because it is "an elongated raised surface that is raised above its neighboring surface and its interconnecting material between the upper surface and neighboring surfaces." Shewchenko Dep., Ex. 3 to Schutt's L.R. 56.1 Stmt., dkt. no. 155-1 at 24:12-17. But this

13

characterization of a particular offset does not expressly or impliedly require that *every* offset have multiple transition walls. Indeed, in related litigation Schutt took the position that a different Cooper helmet had an offset band that bordered the bottom rear edge of the helmet. *See* Schutt's Final Invalidity Contentions in Case No. 16 C 4496, Ex. 7 to Supp. Hanewicz Decl., dkt. no. 165-7 at 332.

The testimony by Schutt's own expert, Jonathan Posner, is equally unpersuasive. He cites no evidence and offers no rationale for his conclusion that an offset requires neighboring surfaces on *both* sides of the offset to be higher or lower. Once again, the Court gives little weight to Posner's entirely conclusory opinions. *See Phillips*, 415 F.3d at 1318.

Schutt's final argument in support of its proposed construction is that Riddell's construction would eliminate the distinction between an offset and the shell itself. Schutt contends that if the offset need only be higher or lower than one neighboring surface, rather than two, then "any surface that is offset from a neighboring surface could be considered 'an offset,' such that there is no distinction between 'an offset' and the 'shell.'" Schutt's Memo. in Supp. Mot. for Summ. J., dkt. no. 157 at 5. The Court sees no merit in this argument, which seeks to confer a significantly different meaning on the term "offset" when used as a verb rather than as a noun. No evidence supports that differentiation. Nor is there any reason to believe that requiring two transition walls rather than one would resolve any theoretical ambiguity about which surface constitutes the offset and which constitutes the shell.

The Court concludes, as it did before, that the term "offset" carries its plain and ordinary meaning. Applying this construction, no reasonable jury could conclude that

the Cooper helmets do not disclose an offset. The bottom rear portions of the Cooper helmets are offset from the neighboring surface, as seen in the following images:



Riddell's L.R. 56.1 Stmt., dkt. no. 132 ¶¶ 52 (Cooper XL7, top), 57 (Cooper 50782). These images clearly show offsets within the plain and ordinary meaning of that term. A reasonable jury thus could not conclude that these helmets do not disclose an offset.

    **2.**    **Offset that increases flexural resistance**

Schutt also argues that even if the Cooper helmets disclose an offset, they do not disclose an offset that increases the flexural resistance of the shell. "Flexural resistance" refers to the shell's resistance to deformation. The parties disagree about whether a reasonable jury would have to or could not find that the offsets on the Cooper helmets increase flexural resistance.

Once again, Schutt primarily relies on the opinion of its expert Posner, who opined that the offset on the Cooper XL7 did not increase the shell's flexural resistance. In support of this assertion, he included a photograph of himself bending the Cooper XL7 with his hand. There is no indication, however, that Posner compared the Cooper XL7's susceptibility to bending with that of any other helmet or that bending a helmet with one's hand is a reliable or scientifically accepted means of determining whether an offset increases a shell's flexural resistance. *See Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1323 (Fed. Cir. 2016) ("District court judges . . . must ensure that expert testimony is reliable and that the testimony relates to scientific, technical or other specialized knowledge, which does not include unsubstantiated speculation and subjective beliefs." (internal quotation marks omitted)). Because Posner's conclusion is not based on a reliable methodology, it is inadmissible and cannot support Schutt's motion for summary judgment. *See Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015) ("[T]he admissibility inquiry centers on whether the methodology employed is reliable."); *see also Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) ("[A] court may consider only admissible evidence in assessing a motion for summary judgment.").

Next, Posner points to the fact that the Cooper helmets contain additional ribbing and a "lip" edge around the offset as evidence that the offset decreases the shell's flexural resistance. That inference is entirely speculative, however. The presence of additional features designed to increase a shell's rigidity does not show that the offset itself lowers flexural resistance. As Riddell observes, there is no reason that a helmet cannot contain multiple strengthening elements. The fact that the Cooper helmets have

16

ribbing and a lip edge is therefore immaterial regarding whether the offset increases flexural resistance.

The parties agree that it is a well-accepted principle of physics that offsets increase flexural resistance; in fact, that is a primary purpose of using offsets in helmets. Schutt's only response is to contend that the Cooper helmets do not actually contain an offset. The Court has already rejected that argument because it is unsubstantiated, and Schutt's circular reasoning is not sufficient to withstand summary judgment. No reasonable jury could find that the offsets on the Cooper helmets do not increase the flexural resistance of the shell.

### 3. Offset that extends substantially between the ear holes

Finally, Schutt argues that no reasonable jury could find that the offset on the Cooper helmets extends substantially between the helmet's ear holes. Yet again, Schutt relies on the purely conclusory opinion of Jonathan Posner, who states that the offset "terminates rearwardly of the rear edge" of the side portion of the helmets. Posner's Rebuttal Report on Validity, Ex. 7 to Schutt's L.R. 56.1 Stmt., dkt. no. 155-1 at 24. This amounts to a statement that the offset does not extend all the way to the ear holes, which is observably true. But that fact does not support an inference that the offset does not extend *substantially* between the earholes. As the images of the Cooper helmets show, the rear offsets span almost the entire length between the earholes along the rear base of the helmets. *See* Riddell's L.R. 56.1 Stmt., dkt. no. 132 ¶¶ 52 (Cooper XL7), 57 (Cooper 50782). Posner's contrary statement is not based on evidence and is entitled to no weight. *See Phillips*, 415 F.3d at 1318.

Next, Schutt relies on the prosecution history of the '755 patent as evidence that

17

the term "extends substantially between the ear holes" disclaims the offsets in the Cooper helmets. During prosecution of the '755, the patent examiner amended the patent because of a prior art reference—specifically, U.S. Patent No. 5,010,598 ("Flynn"). The Flynn patent disclosed a series of offsets and, at Schutt's suggestion, the examiner amended the claim 8 of the '755 patent to add another clause specifying that the claimed offset "extends substantially between the ear holes." '755 Patent Amendments, Ex. 23 to Hanewicz Decl., dkt. no. 133-20 at 13. The applicant explained that this language avoided anticipation because the Flynn reference "merely depicts what appear to be offsets on the top of the helmet and not along the rear, or extending substantially from the left side ear hole to the right side ear hole for increasing flexural resistance." *Id.* at 18. Schutt argues that the offset on the Flynn helmet terminates closer to the ear holes than do the offsets on the Cooper helmets and that the Cooper helmets therefore do not disclose an offset extending "substantially between the ear holes" as that term is used in the '755 patent.

Schutt's argument relies on a version of the doctrine of prosecution disclaimer. In general, although a patentee is "normally entitled to the full scope of its claim language, . . . a departure from this general rule may be warranted" if he or she "disavows the full scope of the claim term during prosecution." *Duncan Parking*, 914 F.3d at 1364. Disclaimer can occur through amendments or any other representations "made to convince the examiner." *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1359 (Fed. Cir. 2017). For prosecution disclaimer to apply, however, "the alleged disavowing actions or statements made during prosecution [must] be both clear and unmistakable." *Id.* "Where the alleged disavowal is ambiguous, or even amenable to

18

multiple reasonable interpretations, we have declined to find prosecution disclaimer."
*Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1045 (Fed. Cir. 2016) (citation omitted) (internal quotation marks omitted).

This is a somewhat atypical context for the doctrine of prosecution disclaimer because Schutt is invoking the doctrine to distinguish a prior art reference at the summary judgment stage, in contrast to the paradigmatic case in which the defendant raises the disclaimer to "prospectively narrow the literal scope of an otherwise more expansive claim limitation" during claim construction. *Trading Techs. Int'l, Inc. v. Open E Cry, LLC*, 728 F.3d 1309, 1322 (Fed. Cir. 2013). The parties do not discuss whether under these circumstances Schutt must show that the amendment clearly and unambiguously disavowed the offset on the Flynn helmets. The Court concludes, however, that this standard applies because Schutt is attempting to narrow the ordinary meaning of the term "substantially" with reference to prosecution history. *See Elbex Video, Ltd. v. Sensormatic Elecs. Corp.*, 508 F.3d 1366, 1371 (Fed. Cir. 2007) ("Claim terms are entitled to a heavy presumption that they carry their ordinary and customary meaning to those skilled in the art in light of the claim term's usage in the patent specification." (internal quotation marks omitted)).

Schutt cannot meet its burden to show prosecution disclaimer because the amendment does not limit the scope of the '755 patent in the way Schutt contends. The applicant's reasoning suggests that the purpose of the amendment was not to disclaim the length of the offset on the Flynn helmet but rather to define the *position* of the offset in the '755 patent. Specifically, the applicant noted that the Flynn reference "merely depicts what appear to be offsets on the top of the helmet." '755 Patent Amendments,

dkt. no. 133-20 at 18. In light of this remark, the most plausible interpretation of the amendment is that it was intended to disclaim offsets that extend across the top of the helmet. The Court concludes that Schutt has not met its burden to prove the existence of a "clear and unmistakable disclaimer that would have been evident to one skilled in the art." *Trivascular, Inc. v. Samuels*, 812 F.3d 1056, 1064 (Fed. Cir. 2016) (internal quotation marks omitted).

For these reasons, the Court concludes that no reasonable jury could find in Schutt's favor on the question of whether the Cooper helmets anticipate claim 11 of the '755 patent. Because the Cooper helmets anticipate claim 11, no reasonable jury could find that the '755 patent is valid, and Riddell is therefore entitled to summary judgment on count 1.

## Conclusion

For the foregoing reasons, the Court grants the defendant's motion for summary judgment [dkt. no. 130] based on non-infringement of the '014 and '355 patents (counts 2 and 3) and invalidity of the '755 patent (count 1). Because the Court concludes that the '755 patent is invalid, it need not decide infringement regarding count 1. *See Lough v. Brunswick Corp.*, 86 F.3d 1113, 1123 (Fed. Cir. 1996). The Court denies the plaintiffs' cross-motion for summary judgment [dkt. no. 152]. The Clerk is directed to enter judgment in favor of defendant Riddell, Inc. and against plaintiffs Kranos IP Corp., Kranos IP II Corp., and Kranos Corp. d/b/a Schutt Sports. The trial date and all other dates and schedules are vacated.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: April 24, 2019